**Robert C. REED, Plaintiff,**

v.

**F. Joseph THOMAS, as Specially Presiding Judge of the Court of Common Pleas for the Thirty-Sixth Judicial District of Pennsylvania, et al., Defendants.**

**Civ. A. No. 74–807.**

United States District Court,
W. D. Pennsylvania.

Sept. 20, 1974.

John J. Petrush, Pittsburgh, Pa., for plaintiff.

Edward A. Mihalik, Sp. Asst. Atty. Gen., Aliquippa, Pa., and Janet Moschetta, Asst. Atty. Gen., Pittsburgh, Pa., for defendant Judge Thomas.

Richard H. Martin, Pittsburgh; Pa., Harry E. Knafelc, Beaver County, Beaver, Pa., for other defendants.

## OPINION

ROSENBERG, District Judge.

This matter comes before me by a complaint of the plaintiff, Robert C. Reed, seeking a manaatory injunction against F. Joseph Thomas, Specially Presiding Judge of the Court of Common Pleas for the Thirty-Sixth Judicial District of Pennsylvania, and Eli C. Corak, Eugene V. Atkinson and George T. Pettibon, as members of the Beaver County Board of Elections.

This action arises by reason of an election contest ·between principally two candidates for the office of judge of the Court of Common Pleas of Beaver County, and results because of a decision of the Supreme Court of Pennsylvania that a certain number of paper ballots were valid which had not had the numbered corners removed from the ballots. The plaintiff bases his action upon the Civil Rights Act, 42 U.S.C. § 1983. He alleges that a denial of due process resulted from (1) the failure of the State's highest tribunal to provide an opportunity for the production of evidence concerning whether certain election officials had, in accordance with state law, informed certain voters of the necessity to remove the identification corners from their election ballots; and (2) the denial of an opportunity to adequately argue the question of his right to such evidence resulting from the late service of candidate Walko's brief in the Supreme Court proceeding and refusal of that Court to grant a petition for rehearing.

The defendants as members of the Beaver County Board of Elections and Judge Thomas of the Court of Common Pleas, each moved to dismiss the complaint. In substance, each motion is similar and asserts a failure in the complaint to state a cause of action and a lack of jurisdiction in this court.

At the hearing the defendants were first heard on the motions to dismiss and thereafter evidence was received on the plaintiff's request for a preliminary injunction. I first discuss the defendants' motions to dismiss. In regard to this motion, the averments of the complaint are taken as stating the facts. Gardner v. Toilet Goods Assn., 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967).

On November 6, 1973, in a general election held in Beaver County, Pennsylvania, three candidates ran for two seats on the Court of Common Pleas for that County. One of the candidates had received both the Republican and Democratic nominations and he is not involved in the problem here presented. The other candidates were the plaintiff, Robert C. Reed and Joseph S. Walko. The vote totals for these two candidates were close and both candidates petitioned for and brought in 112 ballot boxes for recount. During the recount, the Election Board was presided over by the Honorable F. Joseph Thomas, Judge of the Court of Common Pleas of Crawford County, Pennsylvania, who had been specially assigned by the Supreme Court of Pennsylvania. During the recount, the ballot boxes contained a number of paper ballots with the printed ballot number still appended to the corner of these ballots. The Election Board and the Presiding Judge ruled these ballots to be invalid and they were not counted. In so ruling, Judge Thomas followed the directions of the Pennsylvania Election Code, § 1004, as amended 25 P.S. § 2964·and § 1215(d) (25 P.S. § 3055(d)), which provides as follows:

" . . . the election officer shall direct the elector, without unfolding the ballot, to remove the perforated corner containing the number, and the elector shall immediately deposit the ballot in the ballot box. Any ballot deposited in a ballot box at any primary or election without having the said number torn off shall be void and shall not be counted."

Upon appeal to the Supreme Court of Pennsylvania by candidate Walko, the Supreme Court declared the ballots valid and directed Judge Thomas to supervise the removal of the disputed ballot corners and to count them as if the numbers had originally been torn from the corners before being deposited in the ballot boxes. The plaintiff avers that he was not served with a copy of his adversary's brief until immediately before the Supreme Court argument, thus denying him the chance to effectively argue the questions. His petition for reargument, assumedly based upon this point, was denied. He alleges also that the Supreme Court of Pennsylvania assumed that it was the election officials who failed to inform the voters to tear off the corners; and, therefore, he has a right to adduce evidence as to whether this was in actuality the case.

As soon as this matter was returned by the Pennsylvania Supreme Court to Judge Thomas, the plaintiff brought this action to prevent Judge Thomas and the Election Board from counting the disputed ballots.

■ Actions have been brought against state courts under the authorization of the Civil Rights Act, 42 U.S.C. § 1983.[1] Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); Koen v. Long, 302 F.Supp. 1383 (E.D. Mo., 1969), affirmed, 428 F.2d 876, C. A. 8, 1970, cert. den., 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 827 (1971); Mills v. Larson, 56 F.R.D. 63, 67–68 (W.D. Pa., 1972). As stated in *Mitchum, supra,* 407 U.S. at page 240, 92 S.Ct. at page 2161:

"It is clear from the legislative debates surrounding passage of § 1983's predecessor that the Act was intended to enforce the provisions of the Fourteenth Amendment 'against State action, . . . whether that action be executive, legislative, or *judicial.'* Ex parte Virginia, 100 U.S. 339, 346, [25 L.Ed. 676] (emphasis supplied)."

Stripped of all the technicalities and camouflage, the instant plaintiff's real objection is that the Pennsylvania Su-

---

[1] § 1983. "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

preme Court's decision to allow the counting of the disputed votes was contrary to his interests. Without getting into the mertis of that decision the Pennsylvania Supreme Court decided that the technically correctible nature of the failure to remove the number was of less import than protecting the franchise rights of those who cast the disputed ballots. Thus the votes were to be counted in accordance with the direction of the Court.

 In the delicate area of jurisdictional conflict between State and Federal courts, the federal judiciary has, through the doctrines of comity and abstention, often evinced its recognition that the state judicial systems are and should be constitutionally separate entities not subject, except in the most fundamental constitutional areas, to federal court review. Indeed, as stated by this court in East Cross Roads Center, Inc. v. Mellon Stuart, 245 F. Supp. 191 at page 194 (D.C.Pa., 1965):

"The Constitution does not guarantee that the decision of state courts shall be free from error, or require that pronouncements shall be consistent. (citations omitted). When the parties have been fully heard in the regular course of judicial proceedings, an erroneous decision of the state court does not deprive the unsuccessful party of his property without due process of law. . . . If the plaintiff is to have any remedy from a federal court, it would appear that the proper procedure would be by application to the United States Supreme Court for the issuance of a writ of certiorari to the Supreme Court of Pennsylvania."

The Court of Appeals for the Third Circuit in the case of Wood v. Conneaut Lake Park, Inc., 386 F.2d 121 (1967), which was substantially similar to the instant matter, stated:

". . . All that appears is that the majority of the Pennsylvania Supreme Court was selective in their use of testimony to support the conclusions in their written opinion. Ad-mittedly the case was close, but the fact that we might have taken a different approach if the case had been before us on appeal from the trial court, does not require reversal. Absent a showing of arbitrary or capricious action on the part of the state supreme court, no Fourteenth Amendment violation exists.

. . . . . .

Failing a prerequisite showing of arbitrary action by the state court, the District Court was without original jurisdiction to entertain appellant's suit. His remedy, if any, was to petition the United States Supreme Court for certiorari . . ." (at pages 124 and 125)

 As a matter of comity, abstention and equity, I must refuse to review the State Supreme Court decision on the basis of a civil rights complaint. Traditionally the doctrines of comity and abstention have been used by the federal courts to prevent needless friction between the state and federal judiciaries. Harrison v. N. A. A. C. P., 360 U.S. 167, 176, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1950); Darr v. Bulford, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950). Although recognizing the power of this court to take jurisdiction over a Civil Rights Act suit against a state judicial body, the assumption of that jurisdiction here is both unnecessary and unjustified.

We are here confronted with a situation of a State Supreme Court using its discretion to interpret a state election statute. Inasmuch as the plaintiff has made no allegations of fraud, bad faith or wrongdoing by the Pennsylvania courts or the state administrative officials, the comity and abstention doctrines are applicable to avoid needless intervention in what is a matter of state policy decided by the state's highest court. Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973).

I recognize the plaintiff's right to bring a state judicial body before this

court under the Civil Rights Act. It is, however, imperative to the efficient and successful operation of both systems that in such cases the federal district court have the option to refuse consideration. To bind the federal district courts to obligatory acceptance of these types of cases would be an unjustifiable interference with the sovereignty of state governments and, realistically, might very well open the floodgates to a voluminous number of "appeals" from the State Supreme Courts. Such a result is not improbable as evidenced by the multitude of spurious and unnecessary Civil Rights Act complaints in the area of criminal law—particularly from convicted prisoners—which have inundated the Federal bench in recent years.

Indeed the vitality and bijudicial recognition of the comity doctrine is illustrated in the instant matter by Judge Thomas' decision to delay the implementation of the Pennsylvania Supreme Court's mandate, without a temporary restraining order, until I might make an initial determination.

While I point out what a voter's Civil Rights might be, I do not pass on the construction of the Pennsylvania Election Code. That must be left to the Pennsylvania Supreme Court. What I point out here is that a federal court can have no complaint against any state tribunal for enforcing both the United States Constitution and its supporting statutes.

Under Federal law, a qualified elector has not only the right to procure his franchise within his state and community, but also when he is deprived of such right to come to a federal court for aid. But the question as put here by the plaintiff is not for a remedy to grant a voting franchise to certain individuals, but rather to the contrary, to deprive certain individuals of their voting franchise depending upon the judgment placed upon the question which was presented to the Supreme Court of Pennsylvania, the highest appellate court of the State. It apparently had before it the question of which was to be served, the candidate for the judicial post or office, or the voters who manifested their choice. That Court lined up on the side of the right of the voters to not only cast their ballots but to have their ballots counted as is manifested in its decision. In re Recount of Ballots Cast in the General Election Held on November 6, 1973, Pa., 325 A.2d 303, 1974.

In discussing the instructions of the legislature to the election officials upon receipt of ballots by voters at the polling place, Justice Nix, through whom the Pennsylvania Supreme Court spoke, acknowledged the importance of the protective devices which the legislature provided for the security of the voters' franchise rights. But with it all he indicated that paramount importance was in securing to the voters their franchise rights. He said (at page 309):

> "However, while it is most appropriate for the state to legislate to achieve these ends those regulatory measures must not ever be permitted to unduly infringe upon the exercise of the right to vote. Clearly, the invalidation of a ballot where the voter has complied with all instructions communicated to him and in the absence of any evidence of improper influence having been exerted, invalidation would necessarily amount to an unreasonable encroachment upon the franchise and the legislative enactment should not be interpreted to require such a result. To rule otherwise would unnecessarily condition the right to vote upon the proper discharge of the responsibility of an election official over whom the voter has no control. As suggested by the *court en banc* in *Morganroth* [Morganroth Election Case, 50 Pa.D. & C. 143 (1942)], compliance by an election official with his legislatively mandated duties is better achieved by direct action against the derelict official rather than depriving an innocent citizen of his most precious right."

I do not consider it appropriate, even in a civil rights complaint such as this, to pass upon the right or wrong of a State court's decision. But it is not inappropriate for me to comment upon the fact that the Pennsylvania Supreme Court's decision finds consistency with the elective franchise portion of the Civil Rights Act. Congress there provided, inter alia, as follows in 42 U.S.C.:

"§ 1971(a)(1). All citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous condition of servitude; any constitution, law, custom, usage, or regulation of any State or Territory, or by or under its authority, to the contrary notwithstanding."

"§ 1973i. (a) No person acting under color of law shall fail or refuse to permit any person to vote who is entitled to vote under any provision of this subchapter, or is otherwise qualified to vote, or willfully fail or refuse to tabulate, count, and report such person's vote."

"§ 1973n. "Nothing in this subchapter shall be construed to deny, impair, or otherwise adversely affect the right to vote of any person registered to vote under the law of any State or political subdivision."

By virtue of the Congressional declaration of the individual's rights of franchise, it is unnecessary that I discuss any further the constitutional provisions which protect the right to vote against anyone who would deprive a voter of his franchise right.

The plaintiff in this matter was not denied a right of forum for the consideration of his constitutional claims before the state courts. The parties were heard in the normal course of procedure provided by the Pennsylvania Supreme Court and the refusal of that Court to provide a rehearing, when petitioned so to do by the plaintiff, in pursuit of his contentions, does not constitute a failure of due process of law. East Cross Roads Center, Inc. v. Mellon-Stuart Company, *supra,* 245 F.Supp. at page 194. In any event, as already stated, if the state court procedure involves constitutional rights after the Appellate Court of that State has made its determination, resort is to the United States Supreme Court.

I observe, also, that the plaintiff's resort here is by way of equity when he has yet available to him, as a matter of law, an application for a writ of certiorari to the United States Supreme Court. Wood v. Conneaut Lake Park, Inc., *supra;* Anderson v. Lecon Properties, Inc., 457 F.2d 929, C.A. 8, 1972; Malinou v. Cairns, 293 F.Supp. 1007, 1009 (D.C.R.H.1968). This is all the more significant because it was alleged by the defendants at the hearing of this case, and not denied by the plaintiff, that the period for making application for such procedure has not yet expired.

The defendants argue that the plaintiff has not yet suffered any irreparable damage because when the votes are finally counted, it is possible that the plaintiff may yet achieve victory by an increased count of votes in his favor; however, that is an element which should be directed elsewhere at the appropriate time. The defendants point out, correctly, that the plaintiff's attack here is erroneously directed against the County Board of Elections and the supervising judge, when neither of these are more than administrators under the mandate of the Pennsylvania Supreme Court. They point out, also correctly, that an aggrieved defendant, the contending candidate, was not brought in as a defendant. Thus the defendants point out that those who are named are not the discretionary parties but merely those acting under the mandate of the Supreme Court and injunctive relief against them by this court would metaphorically place them in the position be-

tween Scylla and Charybdis and possibly subject them to court contempt either way.

In accordance with the averments contained in the complaint as filed by the plaintiff, the plaintiff has failed to set forth a basic action under 42 U.S.C. § 1983, and the motions of the defendants to dismiss will be granted. It is, therefore, unnecessary to consider the matter of injunction as sought by the plaintiff.