John L. SHAW, Jr., Plaintiff,

v.

RUSSELL TRUCKING LINE, INC. and Medusa Cement Company, Defendants.

Civ. A. No. 81–1852.

United States District Court, W. D. Pennsylvania.

June 30, 1982.

Ronald A. Berlin, Paul D. Boas, Shelly Stark, Berlin, Boas & Isaacson, Pittsburgh, Pa., for plaintiff Shaw.

Joseph A. Vater, Jr., Meyer, Unkovic & Scott, Pittsburgh, Pa., James G. Gilliland, Ray S. Bolze, Howrey & Simon, Washington, D. C., for defendant Medusa Cement Co.

Mark T. Vuono, Wick, Vuono & Lavelle, Pittsburgh, Pa., J. Charles Sheerin, Michigan City, Ind., for defendant Russell Trucking Line, Inc.

## OPINION

MANSMANN, District Judge.

This matter is before the court on Motions to Dismiss and Motions to Strike filed by Defendants Russell Trucking Line, Inc. (hereinafter "Russell Trucking") and Medusa Cement (hereinafter "Medusa"). Plaintiff, John L. Shaw, Jr., brought this action as a result of his discharge by his employer, Russell Trucking. For the reasons set forth below, Defendants' Motions to Dismiss are denied in part and granted in part, and their Motions to Strike are denied.

## FACTUAL BACKGROUND

The facts of this case, accepting the averments of the Complaint as stating the facts,[1] may be summarized as follows:

Plaintiff was formerly employed by Russell Trucking as a truck driver with the responsibility of transporting cement from Russell's terminal at Medusa's plant in Wampum, Pennsylvania, to Medusa's customers, most of whom are located in Ohio. Plaintiff alleges that the trucks were loaded in Pennsylvania at the full weight permitted by Ohio which was, at that time, greater than the weight permitted by Pennsylvania. Thus, the trucks he was assigned to drive were "overloaded" for the 15 to 20 mile distance from the Wampum terminal to the Ohio border.

In April or May 1980, Plaintiff refused to drive an overweight load to Ohio. He attempted to persuade other drivers to do the same and informed Russell Trucking of his possible intention to notify the Pennsylvania State Police if the practice continued. At least two of Russell Trucking's trucks, carrying Medusa's cement, were subsequently stopped by the Pennsylvania State Police and fined for being overweight. Medusa then informed Russell Trucking that Plaintiff was no longer permitted on Medusa's property. Thereupon Russell Trucking notified Plaintiff that they could no longer use his services.

On or about May 8, 1980, Plaintiff filed a grievance pursuant to the collective bargaining agreement between Russell Trucking and Local Union No. 261 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter "Union"). The grievance proceeded to arbitration and, in a decision dated July 20, 1981, the arbitrator found in favor of the Company.[2]

---

1. *Reed v. Thomas*, 385 F.Supp. 266, 267 (W.D. Pa.1974).

2. The arbitrator specifically found that Russell Trucking's action did not constitute a "discharge" from employment. Rather, the arbitrator decided that Plaintiff merely became

Plaintiff filed the present action on October 19, 1981 pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The first count of the Complaint alleges breach of contract against Russell Trucking under § 301. The second count of the Complaint alleges that Medusa intentionally interfered with existing contractual relations. The third count alleges breach of contract against Medusa as a joint employer and the fourth count alleges violations by Russell Trucking and Medusa of the federal antitrust laws.

Defendants have moved to dismiss each count of the Complaint, contending that Plaintiff has failed to state a claim for relief on any basis. This Court will consider the challenges to each count separately and will resolve them accordingly.

## I. CLAIMS AGAINST RUSSELL TRUCKING

Defendants contend that Plaintiff's action for breach of contract against Russell Trucking is barred by the applicable statute of limitations. In this regard, Defendants maintain that Pennsylvania's 30-day statute of limitations for actions seeking to vacate an arbitration award is the applicable limitations period for § 301 actions. Plaintiff maintains that the 30-day limitations period is not the most appropriate in § 301 actions. Rather, Plaintiff submits that the 90-day limitations period which previously existed for actions to vacate arbitration awards is more appropriate. Alternatively, Plaintiff suggests the longer limitations periods applicable to tort and common law contract actions.

The United States Supreme Court has held that the appropriate state statute of limitations is to be used in determining the timeliness of a suit brought under § 301. *International Union, UAW v. Hoosier Car-*

*dinal Corp.*, 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966). In *Liotta v. National Forge Co.*,[3] 629 F.2d 903 (3d Cir. 1980), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2045, 68 L.Ed.2d 348 (1981), the Third Circuit determined that the appropriate limitations period for § 301 actions was the statute of limitations applicable to suits seeking to vacate an arbitration award. Pennsylvania law, as recently changed, provides a limitations period of 30 days for actions to vacate an arbitration award. 42 Pa.C.S.A. § 7314 (Purdon 1981).

Thus, an action to vacate an arbitration award under § 301 must be brought within 30 days after delivery of a copy of the award to the person challenging the award. 42 Pa.C.S.A. § 7314(b) (Purdon 1981). Plaintiff concedes that he received a copy of the award several days after its issuance. The new 30-day period was effective in December 1980, 42 Pa.C.S.A. § 7301 (Purdon 1981), more than seven months prior to the arbitration award here in question. Plaintiff's contention that the 30-day statute is not applicable since the grievance was filed when the three months statute was in effect is without merit.

Accordingly, the 30-day statute of limitations controls in this case. Other courts within this Circuit have also applied the 30-day limitations period in § 301 actions. *See Fedor v. Hygrade Food Products Corp.*, 533 F.Supp. 269 (E.D.Pa.1982); *General Teamsters v. DeBolt Transfer, Inc.*, 525 F.Supp. 1238 (W.D.Pa.1981).

Plaintiff argues that a 30-day statute of limitations is far too short a time for an aggrieved party to prepare and file an action under § 301. The Third Circuit, however, has conclusively determined that the appropriate limitations period for § 301 actions is the state statute of limitations

---

"unemployable" as a result of the action taken by Medusa. According to the arbitrator, even if there was a "discharge", it was supported by "just cause" since the alternative for Russell Trucking "would have been a total shutdown of its operations."

3. In *Liotta*, the arbitration award was issued in 1976 when the Pennsylvania statute of limitations for an appeal from an arbitration award, applicable to the § 301 action, was three months. *See* 5 P.S. § 173 (repealed). The Uniform Arbitration Act replaced the three month statute of limitations with a 30-day limitations period.

applicable to suits seeking to vacate an arbitration award. In this case, that limitations period is 30 days. The 30-day limitations period under state law is a legislative determination with which this Court will not interfere.

Plaintiff also argues that his discharge contravenes public policy and that this Court should not uphold an arbitrator's decision which sanctions violations of the law. It is manifestly clear, however, that this Court can adjudicate only those matters properly before it. Since Plaintiff's present action is brought to vacate the arbitration award, it is barred by the 30-day statute of limitations irrespective of the public policy arguments. There is no authority for the proposition that the statute of limitations is tolled or otherwise disregarded when an action is filed under § 301 to vacate an arbitration award on public policy grounds.

█ At the oral argument on the Motions, counsel for Plaintiff indicated that the factual basis for the § 301 claim would support a claim for the tort of wrongful discharge. Although the § 301 action is precluded by the statute of limitations, an action in tort for wrongful discharge would not be so barred. *See* 42 Pa.C.S.A. § 5524, formerly 12 P.S. § 34 (repealed). The Pennsylvania Supreme Court has impliedly acknowledged the existence of such an action. *See Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). Subsequent cases decided both by the Pennsylvania Courts and by the Federal Courts in this Circuit agree that Pennsylvania now recognizes that a discharge of an employee-at-will which threatens public policy may give rise to a cause of action against the employer for wrongful discharge. *See, e.g., Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363 (3d Cir. 1979); *Boresen v. Rohm & Haas, Inc.*, 526 F.Supp. 1230 (E.D.Pa. 1981); *Yaindl v. Ingersoll-Rand Co.*, 281 Pa.Super.Ct. 560, 422 A.2d 611 (1980); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super.Ct. 28, 386 A.2d 119 (1978).

While Plaintiff has alleged facts necessary to support a cause of action for wrongful discharge, he has not specifically pleaded such an action as a count in his Complaint. Therefore, Plaintiff will be permitted to amend his Complaint, if desired, in order to include the additional count.

## II. CLAIMS AGAINST MEDUSA CEMENT

With respect to Plaintiff's action against Medusa for breach of contract, it is not clear from the Complaint whether Plaintiff is alleging a breach of the collective bargaining agreement or a breach of a separate employment contract. Since Plaintiff is arguing that Medusa is a joint employer with Russell Trucking, the logical inference is that Medusa, in its alleged status as joint employer, has assumed the rights and liabilities established by the collective bargaining agreement. In other words, Medusa steps into the shoes of Russell Trucking if in fact the two are joint employers.

Given the foregoing and consistent with our decision with regard to the action against Russell Trucking, we find that the Plaintiff cannot maintain his breach of contract action against Medusa. Medusa is not a signatory to the collective bargaining agreement. Even assuming that Plaintiff could prove that Medusa *is* a party to the negotiated agreement, Plaintiff has not exhausted his contractual remedies against Medusa in accordance with federal policy. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). Plaintiff filed a grievance only against Russell Trucking. In addition, Medusa was not a party to the arbitration proceeding. Assuming *arguendo* that the grievance and arbitration concerning Plaintiff's discharge did constitute exhaustion of remedies against Medusa, Plaintiff is barred from maintaining a § 301 action against Medusa by the applicable statute of limitations.

█ If, however, Plaintiff can prove that Medusa is a joint employer, he may have a tort action against Medusa for wrongful discharge. Whether or not Medusa is a joint employer is a question for the finder of fact to be determined at trial.

Even if it cannot be shown that Medusa is a joint employer with Russell Trucking, Plaintiff may still maintain his action against Medusa for tortious interference with contractual relations. Plaintiff may plead in the alternative with respect to Medusa's status as a joint employer or as a third party tortfeasor. As with the action for wrongful discharge, the applicable statute of limitations does not bar the action for tortious interference. *See* 42 Pa.C.S.A. § 5524, formerly 12 P.S. § 34 (repealed); *Stringer v. Comm. of Pa., Dept. of Community Affairs, Bureau of Human Resources*, 446 F.Supp. 704 (M.D.Pa.1978).

### III. ANTITRUST CLAIMS

■ With respect to Plaintiff's antitrust allegations, Defendants contend that Plaintiff, as an employee or former employee, lacks standing to sue under the federal antitrust laws. Defendants further contend that their conduct does not, and cannot, constitute an antitrust violation. Plaintiff alleges that Defendants conspired to restrain trade [4] and that his loss of employment was occasioned by his refusal to participate in Defendants' conspiracy.[5] Plaintiff has requested treble damages and costs of suit under § 4 of the Clayton Act, 15 U.S.C. § 15.

■ Congress created the treble-damages remedy provided by § 4 for the purpose of encouraging private lawsuits under the antitrust laws. *Reiter v. Sonotone Corp., et al.*, 422 U.S. 330, 344, 99 S.Ct. 2326, 2333, 60 L.Ed.2d 931 (1979). Indeed, the legislative history reveals that § 4 was intended *primarily* as a remedy for individual citizens. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 486 n. 10, 97 S.Ct. 690, 696 n. 10, 50 L.Ed.2d 701 (1977). It has been recognized in this Circuit that an em-

ployee, or former employee, may have standing to sue under § 4 of the Clayton Act. *See Bravmen v. Bassett Furniture Industries, Inc.*, 552 F.2d 90 (3d Cir. 1977), *cert. denied*, 434 U.S. 823, 98 S.Ct. 69, 54 L.Ed.2d 80 (1978); *International Ass'n of Heat and Frost Insulators and Asbestos Workers v. United Contractors Ass'n*, 483 F.2d 384 (3d Cir. 1973), *amended*, 494 F.2d 1353 (3d Cir. 1974).

The Ninth Circuit recently held in *Ostrofe v. H. S. Crocker Co.*, 670 F.2d 1378 (9th Cir. 1982), *rehearing denied*, May 6, 1982, that a sales manager who was forced to resign because he refused to participate in alleged antitrust violations had standing to sue for treble damages under § 4. The Court stated that enabling employees to maintain actions under § 4, when they have been discharged for refusing to participate in antitrust violations by their employers, promotes the purpose of § 4 and furthers the enforcement of the antitrust laws. At 1384. The Court further found that the harm to the discharged employee flows immediately and directly from the employer's antitrust violation; it is not remote and incidental so as to preclude the employee's suit. At 1384.

■ This Court agrees with the Ninth Circuit that the balance of competing policy considerations behind § 4 favors suit by discharged employees in these circumstances. Weighing the factors involved in the instant case, in accordance with the approach adopted by the Third Circuit, this Court holds that Plaintiff does have standing to assert a claim under § 4. *See Cromar Co. v. Nuclear Materials & Equipment Corp.*, 543 F.2d 501 (3d Cir. 1976). Plaintiff's relationship with Defendants was immediate rather than indirect. More importantly, Plaintiff's injury flows directly from

**4.** In his Complaint, Plaintiff does not state the particular statutory provision upon which his allegation rests. A conspiracy in restraint of trade constitutes a violation of § 1 of the Sherman Act, 15 U.S.C. § 1.

**5.** In his briefs, Plaintiff argues that there were two separate, though related, conspiracies: (1) a conspiracy to restrain trade and (2) a conspir-

acy to discharge Plaintiff. We find, under the facts presented in this case, that a conspiracy to terminate Plaintiff's employment, by itself, is not actionable under the antitrust laws. Plaintiff's termination only constitutes a violation of the antitrust laws if it occurred in furtherance of conduct which otherwise violates those laws.

the alleged antitrust violations on the part of Russell Trucking and Medusa. His discharge was in retaliation for refusing to participate in their unlawful conduct and for threatening to alert law enforcement authorities to their actions.

Whether or not Plaintiff, on the basis of Defendants' conduct, has in fact stated a claim under the antitrust laws, is another matter. There is nothing in the record to indicate whether Defendants' conduct had any effect on competition in interstate commerce. In other words, there is no evidence that the alleged conspiracy tended to, or actually did, restrain trade so as to violate § 1 of the Sherman Act. *See Sitkin Smelting & Refining Co. v. FMC Corp.*, 575 F.2d 440 (3d Cir. 1978), *cert. denied*, 439 U.S. 866, 99 S.Ct. 191, 58 L.Ed.2d 176 (1978). Lack of such facts could result in a dismissal of Plaintiff's antitrust claim for failure to state a cause of action for which relief can be granted. *See Larry R. George Sales Co. v. Cool Attic Corp.*, 587 F.2d 266 (5th Cir. 1979). We believe that this question can be most appropriately resolved if the Motions to Dismiss are converted into Motions for Summary Judgment by the filing of affidavits, if the parties so desire. Therefore, counsel for all parties will be permitted to submit affidavits on the question of what effect, if any, Defendants' practice of "riding heavy" or "overloading" trucks for the 15 to 20 mile distance from Wampum, Pennsylvania to the Ohio Border, had on competition in interstate commerce.

## IV. MOTIONS TO STRIKE

■ Finally, both Defendants have moved to strike the "Preliminary Statement" in Plaintiff's Complaint because it is not in the form of numbered paragraphs, each limited to a single set of circumstances, as Required by Rule 10(b) of the Federal Rules of Civil Procedure.

Although, the "Preliminary Statement" may constitute a technical violation of Rule 10(b), the Court will allow that portion of the Complaint to stand since it was sufficiently clear so as to enable each Defendant to effectively formulate a response. There-

fore, the only amendment required, if Plaintiff so desires, pertains to the tort of wrongful discharge since it was not specifically pleaded as a cause of action in the Complaint.

Medusa's Motion to Strike also disputes Plaintiff's demand for a jury trial with regard to the breach of contract claims. In light of our decision on these claims, this matter is clearly moot.

\* \* \*

In light of the foregoing, the following Order is hereby entered:

And now, this 30th day of June, 1982,

1. Defendants' Motions to Dismiss the § 301 action against Russell Trucking are GRANTED. Plaintiff is given leave of 30 days until July 30, 1982, within which to amend his Complaint, if desired, so as to specifically plead an action for wrongful discharge against Russell Trucking. Defendant Russell Trucking shall be given leave of 20 days, until August 19, 1982, within which to respond.

2. Defendants' Motions to Dismiss the action for breach of contract against Medusa are GRANTED. If, however, Plaintiff wishes to plead an action against Medusa for wrongful discharge, he must so amend his Complaint within the time granted above. If Plaintiff does plead such an action against Medusa, the determination as to joint employment shall be made by the finder of fact at trial. Medusa's Motion to Dismiss the action against it for tortious interference with contractual relations is DENIED.

3. Defendants' Motions to Dismiss the antitrust claim for lack of standing are DENIED. Counsel for all parties are given leave of 30 days within which to file affidavits, if they desire, on the question of whether Plaintiff has stated a claim under the antitrust laws.

4. Defendants' Motions to Strike are DENIED.