# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason Kern,                                          :
                    Appellant                        :
                                                     :    No.  819 C.D. 2020
            v.                                       :
                                                     :    Argued:  February 9, 2021
McGuffey School District, Carl Group,                :
Kenneth Leasure, Jeffrey Ross,                       :
Richard Shriver, Edward Shingle,                     :
J. Scott Finch, Edward Szygenda,                     :
Eric Kolat                                           :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge (**P.**)
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                  FILED:  May 3, 2021


Jason Kern (Kern) appeals from the April 29, 2020 order of the Court of Common Pleas of Washington County (trial court) granting summary judgment in favor of the McGuffey School District, seven Board Members of the School District, Carl Group, Kenneth Leasure, Jeffrey Ross, Richard Shriver, Edward Shingle, J. Scott Finch, and Edward Szygenda, and the Superintendent of the School District, Eric Kolat (collectively, School District), on his claims for wrongful discharge and civil conspiracy.  In this case, we decide whether Kern has alleged a viable public policy exception to the at-will employment doctrine to support a claim for wrongful discharge.

## Background

This case arises from the School District's decision to eliminate Kern's position as supervisor of transportation in June 2017 and furlough him, due to an alleged, substantial decrease in pupil enrollment in the School District. Viewing the evidence in the light most favorable to Kern, as we must, *see Pappas v. Asbel*, 768 A.2d 1089, 1095 (Pa. 2001), the following factual recitation will suffice:

> [Kern] was employed by [the School District] as the supervisor of transportation from June 2015 through June 2017. [The School District] terminated [Kern's] employment in June 2017 due to an alleged "substantial decrease in pupil enrollment in the district." [However, the Board Members] continued to hire their relatives during the purported "substantial decrease." A supervisor was hired subsequent to [Kern] and was not furloughed [and] the [School] District posted a teacher position due to increase in enrollment during this period. The [School] District also hired eight teachers in August 2016.
>
> All of the . . . Board Members have one or more relatives employed by [the] School District. Despite the alleged "decrease in pupil enrollment in the district," the [School District] actually hired three children of [the] [B]oard [M]embers and the niece of the [S]uperintendent in the previous three years. None of these new hires were terminated in the recent furloughs. None of the other eight family members of the [S]chool [B]oard were terminated due to the alleged budgetary constraints.
>
> [Kern] was replaced by a person with less experience as a supervisor at a larger salary. [The School District] had several policies applicable . . . which [it] violated. Policies 310 and 311 require standards to be established for the furlough of one employee over another. Policies 310 and 311 also require qualifications for the affected position to be considered. [The School District] had no standards and failed to consider the candidates' qualifications for the affected positions. The purpose of Policy 303.2 is to prevent nepotism in the employment of school employees.

At least 11 relatives of [the] [B]oard [M]embers and the [S]uperintendent are employed by the [School] [D]istrict, none of whom were terminated due to "substantial decrease in pupil enrollment." All of the [] [B]oard [M]embers . . . who voted to terminate [Kern] and other personnel had a direct interest in keeping their relatives employed. All of the [] [B]oard [M]embers . . . had a conflict of interest with regard to the vote to terminate school personnel while keeping their relatives in the employ of the district.

(Reproduced Record (R.R.) at 102a-03a.)[1]

On July 26, 2017, Kern filed a complaint and later an amended complaint against the School District, alleging that, during the time of the purported substantial decrease in student enrollment and the furloughs, the Board Members of the School District continued to hire their relatives as employees of the School District and, also, retained an overwhelming majority of their family members as employees. Kern averred, *inter alia*, that the Board Members effectively terminated his employment in violation of the Public Official and Employee Ethics Act (Ethics

[1] In its opinion, the trial court recounted a countervailing version of the facts as follows:

[E]nrollment in the school district dropped from 1696 in the 2015-2016 school year to 1576 students in the 2017-2018 school year. The [S]uperintendent presented approximately forty (40) options to the [S]chool [B]oard in an enumerated spreadsheet to compensate for this decreased enrollment. Ultimately, after lawfully scheduled public meetings and the executive sessions associated with those meetings, the [School District] eliminated [Kern's] position and furloughed him. In addition, the [School District] furloughed several other [] employees, as well, including a reading specialist, a technology education teacher, and elementary teachers. Karlie Shriver, [Board Member] Richard Shriver's cousin, was among those furloughed, because she was the least senior teacher considered.

(Trial court op. at 2.)

Act),[2] by engaging in conduct that amounted to a conflict of interest and using their office for the benefit of their family members. Kern asserted one count for wrongful discharge and one count of civil conspiracy.

Thereafter, the School District filed an answer and new matter, followed by preliminary objections to the amended complaint, which the trial court overruled, and the parties proceeded to the discovery phase. After discovery was completed, on November 1, 2019, the School District filed a motion for summary judgment and a brief in support, contending, *inter alia*, that the alleged violations of the Ethics Act do not constitute a public policy exception to the at-will employment doctrine and that, even if they did, the wrongful discharge claim was barred by governmental immunity. The School District also argued that the civil conspiracy claim failed because Kern did not set forth a viable, underlying tort claim. Asserting that there were no genuine issues of material fact, the School District maintained that it was entitled to judgment as a matter of law.

On December 2, 2019, Kern filed a response to the motion for summary judgment, in which he generally "denied that [the] furloughs were due to [a] decrease in enrollment" and asserted that "[t]he evidence [was] clear that [the Board Members] acted to protect the jobs of their relatives at the expense of [Kern]." (R.R. at 75a, 77a.) Kern stated that, during the purported decrease in student enrollment and the associated furloughs alleged to have resulted therefrom, the Board Members "hired their own family members while terminating other non-family members" and "terminated non-family members while keeping family members employed." (R.R. at 106a.) In his supporting brief, Kern maintained that the Ethics Act was a clear enunciation of public policy by our General Assembly and that violations of that

_____

[2] 65 Pa.C.S. §§1101-13.

4

statute were sufficient to support a claim for wrongful discharge. Kern further contended that the School District waived the defense of governmental immunity because it raised the defense in a procedurally improper manner. In addition, Kern argued that governmental immunity did not bar his wrongful discharge claim because he alleged that the Board Members committed intentional and willful misconduct.

By order dated April 27, 2020, the trial court granted summary judgment in favor of the School District on two grounds. First, the trial court determined that violations of the Ethics Act were insufficient to create a public policy exception to the at-will employment doctrine. In so deciding, the trial court noted that "the stated mandate of public policy must be applicable directly to the employee and the employee's actions" and that "[i]t is not sufficient that the employer's actions toward the employee are unfair." (Trial court op. at 4.) The trial court found that "Pennsylvania courts have only recognized public policy exceptions in extremely limited circumstances," particularly where "an employee was fired for performing a function that he was required to perform by law" and "when the firing itself was a criminal activity." *Id.* Recognizing that "[n]o Pennsylvania court has ever recognized nepotism as an exception to the employment at-will doctrine," the trial court concluded that "[i]t is unlikely that the Pennsylvania Supreme Court would expand the public policy exception to encompass termination based upon nepotism without a significantly greater showing of an undisputable public policy." *Id.*

Second, and in the alternative, the trial court determined that assuming, for the sake of the argument, that Kern had a valid claim for wrongful discharge, such a claim does not meet any of the exceptions to governmental immunity and, therefore, governmental immunity would nonetheless bar the claim. In making this determination, the trial court rejected Kern's argument that the School District

5

waived the defense of governmental immunity, noting that the School District raised the defense in its preliminary objections to Kern's amended complaint. Ultimately, because Kern did not set forth an actionable tort, the trial court further concluded that his claim for civil conspiracy must necessarily fail because there can be no civil conspiracy absent an underlying tort cognizable at law.

Kern then filed an appeal to the Superior Court, which by order dated August 26, 2020, transferred the appeal to this Court.[3]

## Discussion

In his brief, Kern argues that the trial court erred in granting summary judgment against him on his claim for wrongful discharge. Kern asserts that Pennsylvania courts have recognized claims for wrongful discharge where the discharge of the employee violated the mandates of public policy. Kern contends that the Ethics Act evinces a strong public policy against public officials engaging in a conflict of interest and using their office for the private gain of family members. As such, Kerns submits that he adduced sufficient evidence to establish a violation of section 1103 of the Ethics Act[4] and that his wrongful discharge claim should proceed to a trial on the merits.

---

[3] In evaluating an order of a court of common pleas granting summary judgment, our scope of review is plenary, and our standard of review dictates that the court's order will be reversed only where it is established that the court committed an error of law or abused its discretion. *Pappas*, 768 A.2d at 1095. Further, we must view the record in the light most favorable to the non-moving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. *Id.* "Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law, will summary judgment be entered." *Id.*

[4] Section 1103(a) of the Ethics Act prohibits a "public official or public employee [from] engag[ing] in conduct that constitutes a conflict of interest." 65 Pa.C.S. §1103(a). Section 1102 of the Ethics Act defines "[c]onflict" or "conflict of interest" as:

**(Footnote continued on next page…)**

6

Further, Kerns contends that he has a wrongful discharge claim based on the School District's alleged violations of its own policies with regard to the manner in which he was terminated.

Generally, in Pennsylvania, there is no common law cause of action against an employer for termination of an at-will employment relationship, and "an at will employee may be terminated for good reason, bad reason, or no reason at all." *Krajsa v. Keypunch, Inc.*, 622 A.2d 355, 358 (Pa. Super. 1993). An exception to this general rule may exist where the termination of the at-will employment "threaten[s] the clear mandates of public policy." *Hunger v. Grand Central Sanitation*, 670 A.2d 173, 175 (Pa. Super. 1996). Public policy exceptions to the at-will employment doctrine, however, have been permitted in only very limited circumstances: "Pennsylvania's traditional view [is] that exceptions to at-will termination should be few and carefully sculpted so as to not erode an employer's inherent right to operate its business as it chooses." *Rothrock v. Rothrock Motor Sales, Inc.*, 883 A.2d 511, 515-16 (Pa. 2005). As our sister court observed:

---

**(continued…)**

> Use by a public official or public employee of the authority of his office or employment or any confidential information received through his holding public office or employment for the private pecuniary benefit of himself, a member of his immediate family or a business with which he or a member of his immediate family is associated. The term does not include an action having a de minimis economic impact or which affects to the same degree a class consisting of the general public or a subclass consisting of an industry, occupation or other group which includes the public official or public employee, a member of his immediate family or a business with which he or a member of his immediate family is associated.

65 Pa.C.S. §1102.

> To state a public policy exception to the at-will employment doctrine, the employee must point to a clear public policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision. *Jacques v. Akzo International Salt, Inc.*, 619 A.2d 748 (Pa. Super. 1993). Furthermore, **the stated mandate of public policy,** as articulated in the constitution, statute, or judicial decision, **must be applicable directly to the employee and the employee's actions. It is not sufficient that the employer's actions toward the employee are unfair**. *Reese v. Tom Hesser Chevrolet-BMW*, 604 A.2d 1072 (Pa. Super. 1992) ([finding that] fact that employer required employee, as condition of continued employment, to reimburse it for losses attributable to action of employee may have been unfair but did not violate law; therefore, employee failed to state public policy exception to doctrine of at-will employment); *Darlington v. General Electric*, 504 A.2d 306 (Pa. Super. 1986) ([determining that] no public policy exception to at-will employment doctrine found even though employee was discharged unfairly in that he was not afforded the opportunity to defend himself against allegations of accounting irregularities).

*Hunger*, 670 A.2d at 175-76 (emphasis added).

Broadly speaking, the exceptions fall into four categories: (1) an employer cannot require an employee to commit a crime, (2) an employer cannot prevent an employee from complying with a statutorily imposed duty, (3) an employer cannot discharge an employee when specifically prohibited from doing so by statute, and (4) an employer cannot retaliate against an employee because the employee exercised statutory and/or constitutional rights. *See Mikhail v. Pennsylvania Organization for Women in Early Recovery*, 63 A.3d 313, 317 (Pa. Super. 2013); *Hennessy v. Santiago*, 708 A.2d 1269, 1273 (Pa. Super. 1998); *Fraser v. Nationwide Mutual Insurance Co.*, 352 F.3d 107, 113 (3d Cir. 2003).

For examples of cases in which Pennsylvania courts have found a viable wrongful discharge claim on public policy grounds, *see generally Shick v. Shirey*, 716

A.2d 1231 (Pa. 1998) (recognizing a wrongful discharge claim where an employee was terminated for filing a workers' compensation claim); *Highhouse v. Avery Transportation*, 660 A.2d 1374 (Pa. Super. 1995) (recognizing a wrongful discharge claim where an employee was terminated for filing an unemployment compensation claim); *Kroen v. Bedway Security Agency*, 633 A.2d 628 (Pa. Super. 1993) (recognizing a wrongful discharge claim where an employee was terminated for refusing to take polygraph test and statute proscribed the use of polygraph tests in employment situations); *Field v. Philadelphia Electric Co.*, 565 A.2d 1170 (Pa. Super. 1989) (recognizing a wrongful discharge claim where an employee was terminated for performing his statutory duty to report nuclear safety violations); *Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119 (Pa. Super. 1978) (recognizing a wrongful discharge claim where an employee was terminated for attending jury duty and complying with statutory obligation to abide by a court's summons for jury service); *Woodson v. AMF Leisureland Centers, Inc.*, 842 F.2d 699, 701-02 (3d Cir. 1988) (recognizing a wrongful discharge claim where an employee was terminated for refusing to serve liquor to intoxicated patron, which is prohibited by statute); *Novosel v. Nationwide Insurance Co.*, 721 F.2d 894 (3d Cir. 1983) (recognizing a wrongful discharge claim where an employee was terminated for refusing to participate in the employer's lobbying effort, in violation of the First Amendment); *Shaw v. Russel Trucking Lines, Inc.*, 542 F. Supp. 776 (W.D. Pa. 1982) (recognizing a wrongful discharge claim where an employee was terminated for refusing to violate antitrust law); *Quint v. Thar Process, Inc.* (W.D. Pa., No. 11-116, filed September 15, 2011), slip op. at 10-13 (recognizing a wrongful discharge claim where an employee was terminated for refusing to commit the crime of perjury at the employer's request); *see also Owens v. Lehigh Valley Hospital*, 103 A.3d 859, 867 n.7 (Pa.

Cmwlth. 2014) (collecting and discussing cases). There are also statutes that specifically prohibit an employer from discharging an employee for engaging in certain conduct. *See, e.g.*, section 1619(a)(2) of the Vehicle Code, 75 Pa.C.S. §1619(a)(2) (preventing employer from discharging employee when the employee "has filed any complaint or instituted . . . any proceeding relating to a violation of a commercial motor vehicle safety rule, regulation, standard or order or has testified or is about to testify in any such proceeding"); section 3(a) of the Whistleblower Law,[5] 43 P.S. §1423(a) ("No employer may discharge . . . an employee . . . because the employee . . . makes a good faith report or is about to report . . . to the employer or appropriate authority an instance of wrongdoing or waste by a public body.").

The Superior Court has stated in *Yetter v. Ward Trucking Corp.*, 585 A.2d 1022 (Pa. Super. 1991), that public policy is found only in a clear legislative mandate that lies "at the heart of a citizen's social right, duties and responsibilities." *Id.* at 1026 (citations omitted). The United States Court of Appeals for the Third Circuit, surveying Pennsylvania law, has deduced that an at-will employee invoking a public policy exception must show that the discharge

> **resulted from conduct on the part of the employee that is required by law or from the employee's refusal to engage in conduct prohibited by law**. "The public policy exception has been most frequently applied under Pennsylvania law when the discharge is a result of the employee's compliance with or refusal to violate the law." . . . We see little evidence in the Pennsylvania cases to date that an alleged public interest will be recognized as a "clear mandate of public policy" in the absence of a legislative or constitutional endorsement in the form of a specific prohibition, requirement[,] or privilege.

---

[5] Act of December 12, 1986, P.L. 1559.

*Clark v. Modern Group Ltd.*, 9 F.3d 321, 328 (3d Cir. 1993) (internal citations omitted) (emphasis added).

Here, the School District did not challenge the legal sufficiency of Kern's allegations that the School District violated section 1103(a) of the Ethics Act. So, for purposes of this appeal, it must be assumed that the Board Members of the School District contravened this statutory section, by engaging in nepotism or displaying favoritism to familial members for their own pecuniary gain when deciding to discharge some employees rather than others. And, being an enactment of our General Assembly, it can be presumed that section 1103(a) of the Ethics Act reflects a public policy that public officials should not act in such a manner.

Nonetheless, the public policy embedded within section 1103 of the Ethics Act is not "applicable directly to . . . [Kern's] actions." *Hunger*, 670 A.2d at 175-76. Nor did Kern's discharge "result[] from conduct on the part of [Kern] that [was] required by law or from [Kern's] refusal to engage in conduct prohibited by law." *Clark*, 9 F.3d at 328. Importantly, in all the cases where the courts have found a cognizable wrongful discharge claim, the employee either committed an affirmative act that was protected as a matter of public policy, *e.g.*, filing a workers' compensation and/or unemployment compensation claim, or refrained from the employer's request to violate public policy, *e.g.*, commit a crime.

In this case, Kern did neither. Instead, Kern was a static and passive actor who did nothing and was asked to do nothing. In essence, he was a bystander who experienced the collateral or incidental effect of an alleged violation of public policy. In other words, to borrow from constitutional/employment retaliation case law, Kern simply did not engage in any "protected conduct"—or, in actuality, any conduct at all. *See Mt. Healthy City School District Board of Education v. Doyle*,

11

429 U.S. 274, 283-87 (1977); *Yount v. Pennsylvania Department of Corrections*, 966 A.2d 1115, 1120 (Pa. 2009). As a matter of law, there is a distinction from the situation where the employer discharges an employee in violation of public policy, based on the employee's conduct in doing something or declining to do something, from the scenario where the employer alone and by itself violates public policy, and the employee indirectly suffers the consequence of discharge based solely on the employer's violation of public policy.

Indeed, if it was otherwise, then a wrongful discharge claim would lie in every conceivable instance where an employer engages in unlawful conduct that somehow results in the termination of employees; *e.g.*, the board of directors of a corporation approves a measure that involves self-dealing and discharges all the employees to recoup their salaries to cover the corporation's expenditures, or a company decides to launder money and act as a "shell" company and then terminates the employees that are unaware of the scheme. While the conduct in these hypotheticals is reprehensible, there are already laws in place to punish a corporation and/or company for such behavior. Here, the Ethics Act contains its own administrative enforcement regime, and the State Ethics Commission has the authority to investigate and punish violations of the Ethics Act, including conflicts of interests such as those that Kern alleges the Board Members committed in this case. *See generally Sivick v. State Ethics Commission*, 202 A.3d 814 (Pa. 2020).

Simply, the at-will employment relationship should not be converted into a wrongful discharge claim just because the employer violated a mandate of public policy. After all, it is difficult to fathom how public policy can shield an employee from discharge when the employee did not take action or inaction (in the sense of failure to comply with an employer's directive) that effectively places the

12

employee under the cloak of what that public policy is designed to protect. In other words, a wrongful discharge claim based on public policy is a narrow exception to the at-will employment doctrine: It is designed to permit public policy to come to the aid of the employee only when the employee makes a choice regarding his/her conduct, either positively availing himself/herself of its protection or negatively, by declining to act in the name of its protection.

At the core of his claim, Kern is not complaining that he was discharged for doing something or not doing something. Instead, Kern asserts that he was terminated because of who he is and to whom he is related. The nature of this claim is differential treatment and, in essence, boils down to the proposition that Kern was discriminated against because he was not a family member of the Board Members. Even so, the General Assembly has passed statutes addressing discriminatory treatment of employees, and nepotism is not a form of impermissible discrimination under the Pennsylvania Human Relations Act (PHRA)[6] or any other statute. As such, the PHRA and anti-discrimination statutes cannot serve as a source of public policy.

True, Kern alleges very distasteful actions by the School District and its Board Members that go against the American ideal that it is not who one knows, but the merits of his/her qualifications and/or work ethic that will lead to success. Unfortunately, for purposes of a wrongful discharge claim, "[i]t is not sufficient that the employer's actions toward the employee are unfair." *Hunger*, 670 A.2d at 175-76.

Moreover, to the extent Kern contends that the School District violated its own internal policies in discharging him, internal policies "do not constitute a clear mandate of public policy." *Frederick v. Barbush* (M.D. Pa., Civil Action No.

---

[6]Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§951-963.

13

1:13-CV-00661, filed March 4, 2014), slip op. at 12; *see Moran v. Ladbroke Racing Management-Pennsylvania Inc.*, 16 Pa. D. & C. 4th 380, 384 (1992).

Therefore, for the above-stated reasons, we conclude that Kern's wrongful discharge claim fails as a matter of law. Because Kern did not set forth a valid claim for wrongful discharge, his claim for civil conspiracy also fails as a matter of law because it is not predicated upon a cognizable cause of action. *See Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. 2008). Accordingly, we affirm the trial court's order granting summary judgment in favor of the School District.[7]

_____
PATRICIA A. McCULLOUGH, Judge

---

[7] In passing, we note that we decline to affirm the trial court on the ground that Kern's wrongful discharge claim is barred by the governmental immunity provisions of the Judicial Code, 42 Pa.C.S. §§8541-8542, commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act). True, the provisions of the Tort Claims Act shield the School District itself from liability as a local agency, because wrongful discharge is an intentional tort that does not satisfy one of the exceptions for claims sounding in negligence. *See Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1022 (Pa. Cmwlth. 2014); *McNichols v. Department of Transportation*, 804 A.2d 1264, 1026-27 (Pa. Cmwlth. 2002). However, the Tort Claims Act does not immunize Kern's wrongful discharge claim to the extent that it is asserted against the Board Members and Superintendent as employees of the School District, because Kern has alleged that the Board Members and Superintendent engaged in willful misconduct. *See Orange Stones Co.*, 87 A.3d at 1023.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason Kern, :
            Appellant :
          :
          : No. 819 C.D. 2020
        v. :
          :
McGuffey School District, Carl Group, :
Kenneth Leasure, Jeffrey Ross, :
Richard Shriver, Edward Shingle, :
J. Scott Finch, Edward Szygenda, :
Eric Kolat :

## _**ORDER**_

AND NOW, this 3rd day of May, 2021, the April 29, 2020 order of the Court of Common Pleas of Washington County is hereby affirmed.

 

 

_____
PATRICIA A. McCULLOUGH, Judge