**PARALEGAL**

v.

**LAWYER \*.**

**Civ. A. No. 90–2955.**

United States District Court, E.D. Pennsylvania.

Jan. 28, 1992.

Jeremy Gelb, Philadelphia, Pa., for paralegal, plaintiff.

Jerome N. Berenson, Philadelphia, Pa., for lawyer, defendant.

MEMORANDUM AND ORDER

GAWTHROP, District Judge.

This is a diversity case, governed by Pennsylvania law and asserting wrongful discharge from employment. Defendant moves for summary judgment, essentially averring that the discharged plaintiff, a paralegal employed by the defendant, a lawyer, has no cause of action because of the virtually impervious employment-at-will doctrine in Pennsylvania, see *Hall v. Lankenau Hospital,* 524 Pa. 90, 569 A.2d 346 (1990), and because, asserts defendant, plaintiff did not perform her job to his expectations, to say the least.

Plaintiff counters that she was, in today's parlance, a whistleblower, fired in retaliation for calling evidence of her employer's alleged misdeed to the attention of her employer's attorney in a matter brought against her employer-lawyer, then pending before the Disciplinary Board of the Supreme Court of Pennsylvania. She

---

\* Because this case devolved from disciplinary proceedings, yet pending, and unresolved before the Disciplinary Board of the Supreme Court of Pennsylvania, and because such proceedings are generally to be adjudicated in private, *Pennsylvania Rules of Disciplinary Enforcement,* Rule 402 Confidentiality, *see, e.g., In re Anonymous No. D.B. 88,* 5 Pa.D. & C. 4th 593 (1989), the names have been changed to protect the presumptively innocent. Although the case number is public record, I would hope that the news or legal reporters would see fit to exercise similar restraint, at least until verdict. Of course, I in no way so order, being mindful of Amendment One.

argues that a retaliatory dismissal in the context of a profession such as the law, which is licensed and regulated by the state, falls within the public policy exception to the at-will doctrine. In fairness to the defendant lawyer, it must be said that he vigorously denies her charges, and claims that she is mentally unbalanced, vindictive, and perjurious. It is fair to say that he speaks ill of her and she of him.

In any event, more fully, plaintiff avers that the reason for her firing was that she had notified her employer's lawyer in the disciplinary matter that her employer had submitted to the Disciplinary Board a backdated letter to the complainant in the disciplinary proceeding, thus fabricating a false record. Plaintiff states that the defendant told her over the phone, while she was in the hospital, that he had authored and typed the letter himself. The apparent purpose of the letter, according to plaintiff, was to deceive the Disciplinary Board into thinking that he had earlier communicated with his client, thus thwarting a disciplinary complaint.

Upon receiving this letter, the lawyer's lawyer immediately wrote defendant about it, and sent him a copy. The very next day, the defendant placed plaintiff on suspension, and shortly thereafter he terminated her. Plaintiff asserts that this falls within the clear public policy exception to the at-will doctrine. For purposes of this Rule 56 summary judgment motion, I agree.

### Discussion

■ The public policy protecting whistleblowers has found its expression in both the legislative and judicial fora. As for the legislative, there is a specific statute, The Whistleblower Law, the Act of Dec. 12, 1986, P.L. 1559, No. 169 (43 P.S. § 1421, et seq.). There has been some tentative contention to the effect that applies to this case since a lawyer is an officer of the court, *see Bass v. Commonwealth*, 485 Pa. 256, 401 A.2d 1133, 1135 (1979), and the court is a public body. The Law however expressly delimits its protective scope to an employee who is "[a] person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied, for a public body." 43 P.S. § 1422. I find that it would be an impermissible statutory stretch to bring this privately employed lawyer within the ambit of that act. Hence, I turn to the common law.

■ Common law principles do establish rather narrowly a cause of action for terminating an at-will employee, when that is done in the face of a clear mandate of public policy. *See, Geary v. United States Steel Corporation*, 456 Pa. 171, 319 A.2d 174 (1974). Although there is no case law precisely on point, there is analogous authority. In *Woodson v. AMF Leisureland Centers, Inc.*, 842 F.2d 699 (3rd Cir.1988), a barmaid, in obeisance to Pennsylvania law,[1] refused to serve an obviously intoxicated patron, for which she was fired. The court ruled, predicting the evolution of Pennsylvania law, that punitive damages could lie for such a wrongful discharge: "Pennsylvania, while retaining the employment-at-will doctrine, recognizes an exception for discharges that violate public policy." *Id.* at 701; *See also, Molush v. Orkin Exterminating Co.*, 547 F.Supp. 54 (E.D.Pa. 1982); *Rettinger v. American Can Co.*, 574 F.Supp. 306, 311 (M.D.Pa.1983).

That exception sounds in tort and is based upon the principle first enunciated in *Geary* that

there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, *particularly where*

---

1. The Pennsylvania Dram Shop Act, 47 P.S. § 4–493, Chapter 1 of the Liquor Code:

"*It shall be unlawful —*

"Furnishing liquor or malt or brewed beverages to certain persons

"(1) For any licensee or the board, *or any employe, servant or agent to such licensee* or of the board, or any other person, *to sell, furnish or give any liquor or malt or brewed beverages,* or to permit any liquor or malt or brewed beverages to be sold, furnished of given, *to any person visibly intoxicated,* or to any insane person, or to any minor, or to habitual drunkards, or persons of known intemperate habits.

*some recognized facet of public policy is threatened.*

*Geary v. United States Steel Co.*, 456 Pa. 171, 184–85, 319 A.2d 174, 180 (1974) [emphasis added].

Courts have been reluctant to expand the exception to cover "novel theories of public policy." *See, e.g. Darlington v. General Elec.*, 350 Pa.Super. 183, 504 A.2d 306, 319 (1986) (no cause of action for employee who questioned the adequacy of employee evaluation procedures). However, as mentioned, where there is a "violation of a clear mandate of public policy," the exception has been held to apply. *See, e.g., Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363 (3rd Cir.1979) (cause of action for wrongful discharge for refusal to break law against polygraph testing); *Shaw v. Russell Trucking Line, Inc.*, 542 F.Supp. 776 (W.D.Pa.1982) (for reporting motor vehicle violations); *McNulty v. Borden*, 474 F.Supp. 1111 (E.D.Pa.1979) (for refusing to violate antitrust law).

Although factually dissimilar, the case at bar shares several essential legal principles and factual premises with those cases where a public policy exception has been applied. Particularly striking is the analogy with the controlling precedent in this circuit, *Woodson, supra.* There as here, the employers operate under state license to serve the public, although admittedly a bartender "serves" the public in a different manner from that of an attorney at law. Both involve important public policies. A lawyer has an affirmative duty not to falsify material facts and not to falsify evidence, Pennsylvania Rules of Professional Conduct 3.3(a)(1) and 3.4(a), 3.4(b). The public policy underlying these rules is so obvious as to need no discussion. Thus, suffice it to say, a lawyer's duty not to concoct falsehood, masquerading as true evidence, to be admitted into a court of justice, is as clear as the bartender's duty not to serve the visibly intoxicated. Nor should a lawyer—or anyone for that matter—forge. *See* 18 Pa.C.S. § 4101.[2] So also, mail fraud is to be eschewed. *See* 18 U.S.C. § 1341.[3] These concepts are as old as civilized society, not "novel theories of public policy." *Cf., Darlington v. General Elec., supra*, 504 A.2d at 319.

In any event, in this case, as in *Woodson*, the employee refused to countenance an illegal act, causing her to be fired. The analog is four-square apt. Hence, construing the evidence in the light most favorable to the non-moving party, as I must at this juncture, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), I conclude as a matter of law that if plaintiff's averments prove true, since they implicate a clear public policy, this case may not yet end.

Since genuine issues as to material fact remain as to the cause of the plaintiff's dismissal, and since the defendant is not entitled to a judgment as a matter of law, I shall deny the defendant's motion for summary judgment.

---

**2.** 18 Pa.C.S. § 4101 defines forgery as follows:
(a) Offense defined. *A person is guilty of forgery if, with intent to defraud* or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, *the actor:*
(1) alters any writing of another without his authority;
(2) *makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or* place or in a numbered sequence *other than was in fact the case,* or to be a copy of an original when no such original existed; or
(3) *utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection.* [emphasis added].

**3.** 18 U.S.C. § 1341 reads in pertinent part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, ... furnish ... for unlawful use ... anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purposes of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service ... shall be fined not more than $1000 or imprisoned not more than five years, or both." *See, Schmuck v. U.S.*, 489 U.S. 705, 710, 109 S.Ct. 1443, 1447, 103 L.Ed.2d 734; *But see, U.S. v. Peruto*, Criminal No. 91–00506, 1992 WL 10475 (E.D.Pa.1992).