**Cynthia J. BROWN, Plaintiff,**

v.

**Robert M. HAMMOND, Esquire individually and Robert Hammond Associates, Defendants.**

**Civ. A. No. 92–3155.**

United States District Court,
E.D. Pennsylvania.

Jan. 12, 1993.

Samuel A. Scott, Macungie, PA, for plaintiff.

Gail A. Brunner, Philadelphia, PA, for defendants.

## MEMORANDUM

WALDMAN, District Judge.

Plaintiff is a former employee of defendant attorney and his law firm. She is suing for wrongful discharge after having "blown the whistle" on the defendants' allegedly improper billing practices. Jurisdiction is based on diversity of citizenship.[1] Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

### I. LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint. *See Sturm v. Clark*, 835 F.2d 1009, 1111 (3d Cir.1987). In deciding a motion to dismiss for failure to state a claim, the court must "accept as true all the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party." *See Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). Dis-

---

1. Plaintiff is a citizen of Texas and defendants are citizens of Pennsylvania. The amount in controversy exceeds $50,000.

missal is not appropriate unless it clearly appears that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Robb v. Philadelphia,* 733 F.2d 286, 290 (3d Cir.1984). A complaint may be dismissed when the facts pled and the reasonable inferences drawn therefrom are legally insufficient to support the relief sought. *See Pennsylvania ex. rel. Zimmerman v. Pepsico, Inc.,* 836 F.2d 173, 179 (3d Cir.1988).

## II. FACTS

The pertinent factual allegations in the light most favorable to plaintiff are as follows. From November 4, 1990 to April 4, 1991, plaintiff was employed by defendants at will as a paralegal and secretary. The time she spent on client matters was billed to clients as "attorney's time" without any notice to such clients that the work was done by a non-lawyer. Her supervisors directed her at times to bill her work directly as attorney's time despite her protests that the practice was improper. She then informed various authorities and affected clients of this practice. Plaintiff does not allege that she had any responsibility for overseeing the firm's billing practices.

Defendants responded by imposing new work rules with respect to hours of employment which applied only to and discriminated against plaintiff. She was subsequently terminated.

In count I, plaintiff asserts that she was terminated in violation of public policy for reporting the wrongful actions of defendants. In count II, she asserts that she was terminated in violation of public policy for refusing to perform wrongful actions. In count III, she asserts that defendants' actions were intentional and calculated to cause her harm and thus constitute a "prima facie tort."

## III. DISCUSSION

■ It is well established under Pennsylvania law that "absent a statutory or contractual provision to the contrary ... either party [may] terminate an employment rela-

tionship for any or no reason." *Geary v. United States Steel Corp.,* 456 Pa. 171, 175–176, 319 A.2d 174 (1974). An employer may determine, without any fair hearing to an at-will employee, that the employer simply wishes to be rid of him. *Darlington v. General Electric,* 350 Pa.Super. 183, 210, 504 A.2d 306 (1986). An employer's right to terminate an at-will employee has been characterized as "virtually absolute." *O'Neill v. ARA Services, Inc.,* 457 F.Supp. 182, 186 (E.D.Pa.1978).

■ Pennsylvania law does recognize, however, a nonstatutory cause of action for wrongful discharge from employment-at-will, but only in the quite narrow and limited circumstance where the discharge violates a significant and recognized public policy. *Borse v. Piece Goods Shop,* 963 F.2d 611, 617 (3d Cir.1992); *Geary, supra; Darlington, supra.* Such a public policy must be "clearly mandated" and of a type that "strikes at the heart of a citizen's social right, duties and responsibilities." *Novosel v. Nationwide Insurance Co.,* 721 F.2d 894, 899 (3d Cir.1983). *Geary* signals a "narrow rather than expansive interpretation of the public policy exception." *Bruffett v. Warner Communications, Inc.,* 692 F.2d 910, 918 (3d Cir.1982). Public policy exceptions "have been recognized in only the most limited of circumstances." *Clay v. Advanced Computer Applications, Inc.,* 522 Pa. 86, 89, 559 A.2d 917 (1989).

While courts generally look to constitutional or legislative pronouncements, some courts have found an expression of significant public policy in professional codes of ethics. *See Paralegal v. Lawyer,* 783 F.Supp. 230, 232 (E.D.Pa.1992); *Cisco v. United Parcel Services,* 328 Pa.Super. 300, 476 A.2d 1340 (1984). *See also Hansrote v. Amer Indus. Technologies,* 586 F.Supp. 113, 115 (W.D.Pa.1984).

■ The court in *Paralegal* found that the Pennsylvania Rules of Professional Conduct as adopted by the Pennsylvania Supreme Court pursuant to state constitutional powers, Pa. Const. art. 5, § 10(c), could provide the basis for a public policy

exception to the at will employment rule. *See Paralegal*, 783 F.Supp. at 232 (finding public policy against falsifying material facts and evidence from Rules 3.3(a)(1), 3.4(a), and 3.4(b)). In that case, a paralegal whose employer was being investigated by the state bar was terminated after she learned that the attorney-employer had created a false record to exculpate himself and so informed the lawyer who was representing the employer in disciplinary proceedings.

Taking plaintiff's allegations as true, defendants would appear to have violated the Pennsylvania Rules of Professional Conduct by misrepresenting to clients who had performed work for which they were paying or by effectively permitting the unauthorized practice of law by a non-lawyer. *See* Rule 1.5 (regulating fees); Rule 5.5(a) (prohibiting aiding non-lawyers in unauthorized practice of law); Rule 7.1 (prohibiting false or misleading communications about lawyer's services); 8.4(c) (defining "professional misconduct" to include dishonesty, fraud, deceit or misrepresentation).

Based upon pertinent precedent and persuasive authority, the court must distinguish between gratuitous disclosure of improper employer conduct and disclosures by persons responsible for reporting such conduct or for protecting the public interest in the pertinent area. *See Smith v. Calgon Carbon Corp.*, 917 F.2d 1338, 1345 (3d Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1597, 113 L.Ed.2d 660 (1991) (discharged chemical company employee not responsible for reporting improper emissions or spills); *Field v. Philadelphia Electric Co.*, 388 Pa.Super. 400, 565 A.2d 1170 (1989) (nuclear safety expert discharged for making statutorily required report to federal agency). *See also Hays v. Beverly Enters.*, 766 F.Supp. 350 (W.D.Pa.), *aff'd*, 952 F.2d 1392 (3d Cir.1991) (physician's duty

does not extend to plaintiff nurse); *Gaiardo v. Ethyl Corp.*, 697 F.Supp. 1377 (M.D.Pa.1986), *aff'd*, 835 F.2d 479 (3d Cir. 1987) (plaintiff not supervisor or responsible for quality control).

The court concludes that plaintiff's termination for gratuitously alerting others about defendants' improper billing practice does not violate the type of significant, clearly mandated public policy required to satisfy the very narrow exception to Pennsylvania's rigid at will employment doctrine.

■ By her own characterization what plaintiff did was to "blow the whistle" on wrongful conduct by her employer. The Pennsylvania Whistleblower Law, 43 Pa. C.S.A. § 1421 *et seq.*, protects from retaliatory adverse employment action employees of public bodies or entities receiving public appropriations who report wrongdoing.[2] That Law, which excludes from its protection wholly private employment, has been found not to codify any previously existing legal right or privilege and held not to constitute an expression of clearly mandated public policy in the context of private at will employment.[3] *See Smith*, 917 F.2d at 1346; *Cohen v. Salick Health Care, Inc.*, 772 F.Supp. 1521, 1531 (E.D.Pa.1991) (employee discharged for alerting employer's prospective contractee of inflated financial projections); *Wagner v. General Electric Co.*, 760 F.Supp. 1146, 1155 (E.D.Pa.1991) (employee discharged after expressing criticism of employer's product to customers).

■ On the other hand, courts are less reluctant to discern important public policy considerations where persons are discharged for refusing to violate the law themselves. *See Smith*, 917 F.2d at 1344; *Woodson v. AMF Leisureland Centers, Inc.*, 842 F.2d 699 (3d Cir.1988) (refusal to sell liquor to intoxicated patron); *Shaw v.*

---

**2.** While the Whistleblower Law protects covered employees who report impropriety to outside authorities, it does not authorize such employees to voice complaints directly to clients of a public or publicly funded entity.

**3.** Because of the special nature of the attorney-client relationship, an attorney's misrepresentation about the source, quality, nature or cost of.

work performed is arguably more reprehensible than such misrepresentation to clients and customers by other suppliers of goods and services. It is not, however, sufficiently different in kind therefrom to satisfy the narrow public policy exception to Pennsylvania's stringent at will employment doctrine.

*Russell Trucking Line, Inc.,* 542 F.Supp. 776, 779 (W.D.Pa.1982) (refusal to haul loads over legal weight); *McNulty v. Borden, Inc.,* 474 F.Supp. 1111 (E.D.Pa.1979) (refusal to engage in anti-trust violations). No employee should be forced to choose between his or her livelihood and engaging in fraud or other criminal conduct. To the extent that plaintiff appears to allege that she was also terminated for refusing herself to engage directly in fraudulent billing, her action may proceed.

 Courts applying Pennsylvania law also have implied or assumed the existence of a specific intent to harm exception to the employment-at-will doctrine. *See, e.g., Sugarman v. RCA Corp.,* 639 F.Supp. 780, 785 (M.D.Pa.1985); *McNulty,* 474 F.Supp. at 1119; *Tourville v. Inter–Ocean Insurance Co.,* 353 Pa.Super. 53, 508 A.2d 1263 (1986), *appeal denied,* 514 Pa. 619, 521 A.2d 933 (1987). More recently, however, there is serious doubt about whether any such exception exists. *See Mann v. J.E. Baker Co.,* 733 F.Supp. 885, 890 (M.D.Pa.1990); *McWilliams v. AT & T Information Systems, Inc.,* 728 F.Supp. 1186, 1193 (W.D.Pa.1990); *Paul v. Lankenau Hospital,* 524 Pa. 90, 569 A.2d 346 (1990).

Even assuming that a specific intent to harm exception exists, such an intent cannot be established by the harm normally occasioned by the act of discharging an employee. *Tourville, supra,* 353 Pa.Super. at 56 n. 5, 508 A.2d 1263. Any such exception would apply only in cases of purely malevolent conduct, that is, a termination for which no reason existed other than "an atavistic desire to hurt another." *Id.* at 57, 508 A.2d 1263. It appears from the face of plaintiff's complaint that defendants' reason for discharging her was conduct by her, however well motivated, which threatened to deprive defendants of clients and subject them to sanctions. To the extent that plaintiff's claim is premised upon an intent to harm theory, it will be dismissed.

An appropriate order will be entered.

### ORDER

AND NOW, this 12th day of January, 1992, upon consideration of defendants' Motion to Dismiss Plaintiff's Complaint, consistent with the accompanying memorandum, IT IS HEREBY ORDERED that said Motion is GRANTED in part and DENIED in part in that counts I and III of plaintiff's complaint are DISMISSED.