Suzanne KEEFER, Plaintiff,

v.

James DURKOS, individually, Mary Ellen Deal, individually, Donna Younkin, individually, Janet Virgin, individually, Saralane Raboci, individually, John Doe, individually, and Jane Doe, individually, and James Durkos, Mary Ellen Deal, Donna Younkin, Janet Virgin, and Saralane Raboci in their capacity as Directors of the Board of Education of the Turkeyfoot Valley Area School District, Defendants.

Civ. A. No. 04–187J.

United States District Court, W.D. Pennsylvania.

March 17, 2005.

Robert P. Ging, Jr., Confluence, PA, for Plaintiff.

Patricia A. Monahan, Marshall, Dennehey, Warner, Coleman & Goggin, Pittsburgh, PA, for Defendants.

### MEMORANDUM OPINION and ORDER

GIBSON, District Judge.

This matter comes before the Court on the Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) (Document No. 15) and accompanying Brief (Document No. 16) and the Plaintiff's Response (Document No. 17) and Brief in Opposition (Document No. 18). Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) is granted in part and denied in part.

The Court has jurisdiction over the Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and the Plaintiff's state law

claim pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391.

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12 b) 6):

> the district court [is] required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant. *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989); *D.P. Enters., Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir. 1984). In determining whether a claim should be dismissed under Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record. Moreover, a case should not be dismissed for failure to state a claim unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *D.P. Enters.,* 725 F.2d at 944.

*Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3rd Cir.1994). In considering a motion to dismiss, the court is not deciding the issue of whether a plaintiff will ultimately prevail, but is deciding if the plaintiff is entitled to offer evidence to support claims. *Lake v. Arnold,* 112 F.3d 682 (3rd Cir.1997); *Nami v. Fauver,* 82 F.3d 63 (3rd Cir.1996).

> [D]ismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3rd ed.2004)(footnotes omitted).

All factual allegations of the complaint need not be set forth for the purposes of this motion. It is sufficient to state in summary that this civil action concerns the termination of the Plaintiff as secretary of the school board for the Turkeyfoot Valley Area School District, Somerset County, Pennsylvania. The Plaintiff alleges that her termination was based upon her "whistleblowing" relative to the actions of Defendant Mary Ellen Deal taking food and utilizing services from the cafeteria for the school district for purposes unrelated to school district business and, additionally, that this action was taken against her as a result of the Defendants' inability to retaliate directly against the Plaintiff's husband, who is the school district superintendent, after he allegedly refused to forge documents at the request of the Defendants. The Defendants are various mem-

bers of the school board of the Turkeyfoot Valley Area School District.

The Defendants make several arguments in their Motion to Dismiss as to the counts of the Complaint.

## COUNT I

First, Defendants argue that the Plaintiff fails to state a claim under the Pennsylvania Whistleblower Law because the acts reported "do not constitute waste or wrongdoing as defined under the Law and the information that she reported was already public knowledge." Defendants' Brief, p. 5. Defendants further argue that a lack of causation is apparent from the Plaintiff's Complaint. Defendants' Brief, pp. 6–7. Finally, the Defendants argue that the Plaintiff is without standing to bring a claim under the Whistleblower Law because she learned of the actions at issue through public meetings. Defendants' Brief, p. 8. Plaintiff counter-argues that the Whistleblower Law does not require an allegation of a violation of a state or federal statute to support her claim, that she has satisfied the notice pleading requirements of the Federal Rules of Civil Procedure, and that the Plaintiff does have standing to bring this claim because the fact that information used by the Plaintiff to report wrongdoing or waste was made public is without consequence under the statute, in addition to the fact that her learning of this information from a public meeting or record has not been established in this case.

■ Preliminarily it must be noted that the wrongdoing alleged need not be "concealed." *Rankin v. City of Philadelphia,* 963 F.Supp. 463, 473 (E.D.Pa.1997). Judge Brody in *Rankin* found the following:

> Nowhere in the definition of "wrongdoing" is a requirement that the violations be concealed. Nor does any other provi-

sion of the Whistleblower Law require a showing that the employer attempted to conceal such violations, and the defendants have not identified any other authority imposing such a requirement. Thus, the defendants' objection that Rankin failed to plead facts sufficient to determine that the City defendants concealed the violations is simply irrelevant. Rankin has alleged that the Philadelphia Nursing Home was in substantial violation of numerous health and safety requirements. Moreover, health and safety regulations are enactments "designed to protect the interest of the public." Therefore, Rankin has adequately alleged "wrongdoing" for purposes of the Whistleblower Law.

*Id.* This Court agrees. To conclude otherwise would allow public bodies to place their violations of law on public record and thereby insulate any future acts of retribution of the public body against any staff member who reports the wrongdoing to the appropriate authority. On this argument, the motion to dismiss is denied.

■ As for the Defendants' second argument that no violations of any law have been alleged to support the reporting of the alleged "wrongdoing", the Court will also deny the motion to dismiss on this argument. The Plaintiff alleges:

> that Defendant Mary Ellen Deal, a member of the School Board, had required the school cafeteria manager to provide Mrs. Deal with food from the school cafeteria for non-school activities, and had used School District personnel, and resources, for non-school purposes. The funding for the school cafeteria includes ... tax dollars, and the School District purchases food as a tax exempt entity. Defendant Deal had no authority to requisition food or School District resources for her own non-school purposes.

Complaint, ¶ 23. Plaintiff thereafter contacted the Auditor General of Pennsylvania regarding this issue. Complaint, ¶ 24. As a fact alleged within the Complaint, the Court must accept there assertions as true and, therefore, accepted as true, these acts could constitute various violations of federal and state law even though they may not violate any school district policy on the matter. Therefore, this conduct, as alleged, is the type of information falling within the ambit of the Whistleblower Law and the Court finds no reason for the Plaintiff to enumerate specific laws within her Complaint to withstand the Defendants' Motion to Dismiss. *See Podgurski v. Pennsylvania State University,* 722 A.2d 730 (Pa.Super.1998)(finding sufficient facts were plead that support a claim under the Whistleblower Law). This conclusion is also consistent with the "notice pleading" of the Federal Rules of Civil Procedure. The Court trusts the parties will further explore these allegations in discovery.

 As for the Defendants' third argument that the Plaintiff's Complaint lacks sufficient pleading to establish a causal connection between the Plaintiff's reporting of wrongdoing and her subsequent termination, the Motion to Dismiss is denied. Accepting facts in the Complaint as true and construing them in a light most favorable to the Plaintiff, the Plaintiff has alleged awareness of the report by the Defendants and that the Defendants' actions were taken as a result of this awareness. Complaint, ¶ ¶ 39–40. The manner in which the Defendants learned of the Plaintiff's report to the Auditor General can be determined through discovery.

## COUNT II

 The Plaintiff alleges in Count II of her Complaint that the Defendants violated her procedural and substantive due process rights in "continued employment under protection of the Whistleblower Law of Pennsylvania and deprived her of rights, privileges and immunities secured by the Constitution of Pennsylvania and the Constitution of the United States of America." Complaint ¶ 56.

The Defendants note that the Plaintiff has not plead that her employment was pursuant to a contract or any governmental action that created a property interest in her as to her employment. Defendants' Brief, pp. 9–10. Without such a fact being plead, the Defendants argue that her employment is not protected by the due process clause of the Fourteenth Amendment. Defendants' Brief, p. 10. Defendants argue further that the Plaintiff's former position of school board secretary is in fact an at-will position citing *Buell v. Union Twp. School Dist.,* 395 Pa. 567, 150 A.2d 852 (1959). *Id.* In addition, Defendants also argue that under Third Circuit precedent the Plaintiff's right to her job is not a fundamental right. Defendants' Brief, p. 13. The Plaintiff counter-argues that she has properly alleged an action under 42 U.S.C. § 1983 as the Defendants acted under color of law and that the Whistleblower Law "guarantees the Plaintiff a property right, to wit, the right not to have individuals against whom a good faith claim of wrongdoing or waste has been made, retaliate or discriminate against her." Plaintiff's Brief, pp. 11–12. Plaintiff goes on to recognize that while her previous employment with the school board was "at-will," her status as a whistleblower creates the property right in her employment that prevents her termination based upon retaliation for her reporting of wrongdoing or waste. Plaintiff's Brief, p. 12.

Before the Court can analyze this alleged "right" under the framework of *Nicholas v. Pennsylvania State University,* 227 F.3d 133 (3rd Cir.2000), the Court must determine if this alleged "right" un-

der the Whistleblower Law is indeed a right and, if so, what kind of right.

Since the Plaintiff is basing her claims in Count II under both the substantive and procedural prongs of the Due Process Clause, the Court will briefly address each one separately.

First, the Plaintiff's substantive claims that she has a right in her former employment based upon the argument that the Pennsylvania Whistleblower Law creates such a right is incorrect. It has been noted that the Due Process Clause protects both substantive and procedural due process rights; under the substantive prong, there exist two threads: 1) a challenge to the validity of legislative acts and 2) non-legislative action or executive acts. *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 138–139 (3rd Cir.2000). The second thread of non-legislative or executive acts is that which is applicable here because it concerns an employment decision. *Id.* at 139 n. 1. However, the Plaintiff's claim does not state a claim for a "property" interest protected under the Fourteenth Amendment; the Third Circuit has recognized "real property ownership" as the only property right having a "particular quality" considered to be "fundamental" under the United States Constitution. *Id.* at 140–141. Therefore, the Plaintiff's claim for violation of substantive due process under Count II must fail as she claims a right to her employment as secretary for a school board. The Court will not permit leave to amend this part of Count II as it would be impossible that any amendment would bring the Plaintiff's claims within a permissible claim under substantive due process.

■ However, the failure of the substantive due process claim does not preclude a claim based upon a violation of procedural due process. Plaintiff claims that her procedural due process rights

were violated in that she was terminated from her employment without a hearing, thereby violating her procedural due process rights established by the Pennsylvania Whistleblower Law that guarantees her a right to have a hearing and to respond to the suggestion of her termination in that she was reporting wrongdoing and waste as an employee of the school district. Plaintiff's Brief, pp. 12–14. Defendants argue that the Plaintiff possessed no such right as she was an "at-will" employee under Pennsylvania's Public School Code. Defendants' Brief, pp. 10–11.

Judge Munley of the Middle District of Pennsylvania has previously ruled upon this issue:

Defendants claim that plaintiff is not entitled to pursue a claim under Pennsylvania's Whistleblower Law because plaintiff was a "non-union, non-contract employee." Defendants claim that the Whistleblower Law does not apply to at-will employees. This court disagrees. The Whistleblower Law defines "employee" as "a person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied, for a public body." 43 P.S. § 1422 et seq. The term "or" makes clear that the legislature intended for the statute to apply in the first instance to "a person who performs a service for wages ... for a public body." *Id.* In a concurring opinion in Riggio v. Burns, Judge Cirillo explained that the Whistleblower Law is "a statutory remedy for at-will employees terminated from entities that receive funding from Commonwealth or political subdivision authority." *Riggio v. Burns*, 711 A.2d 497, 503 (Pa.Super.1998). Here, there is no dispute that plaintiff performed a service for wages for the County of Luzerne. Plaintiff has also presented evidence of his efforts to alert his superiors

to governmental waste and wrongdoing. See, e.g., App. Exhibit 5 (letter to County Commissioner regarding the loss of "almost $10 million tax dollars in Luzerne County in 1997 due to abatements.") Accordingly, defendants' summary judgment motion on plaintiff's Whistleblower Law claim will be denied. *Brominski v. County of Luzerne*, 289 F.Supp.2d 591, 596 (M.D.Pa.2003). This analysis is equally applicable to the case *sub judice* and the Court agrees with it and adopts it. Therefore, the Court finds that the Plaintiff has alleged sufficient facts to state a claim for a violation of her procedural due process rights under Count II.

## COUNT III

■ Defendants argue that the Plaintiff's claim under Count III alleging a violation of the Plaintiff's First Amendment rights is not viable as the Plaintiff has not established a causal connection between her termination and her earlier reports to the Auditor General of Pennsylvania. Defendants' Brief, pp. 13–14. Plaintiff counter-argues that all facts alleged by her must be accepted as true and in a light most favorable to her.

Plaintiff also alleges that the Defendants argued that the Plaintiff did not possess First Amendment rights to report the wrongdoing and waste at issue. Plaintiff's Brief, p. 16. The Court does not read the Defendants' argument as such, but only that the Defendants made passing reference to the applicable law of First Amendment retaliation cases when citing to the case of *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The Court reads the Defendants' argument as one which asserts that causation of the Plaintiff's termination as a result of the exercise of her First Amendment rights has not been established and further that Plaintiff

has failed to demonstrate that such exercise of rights was somehow adverse to the Defendants. Taking all of the Plaintiff's allegations as true and viewing them in a light most favorable to the Plaintiff, the Court finds that the Plaintiff has plead a viable First Amendment retaliation claim. In Exhibit Two to the Complaint, the Plaintiff details that one of the Defendants (Deal) had required that food be taken from the school district for non-school district related purposes without paying for it; Plaintiff's counsel also indicates in Exhibit Four to the Complaint that food was provided to members of the school board and that the members of the school board may tamper with evidence prior to the next audit by the Auditor General. And as previously addressed, the disclosure of this information to the Defendants may have occurred through an investigation by the State Ethics Commission. Therefore, for purposes of this motion, the Court accepts the alleged facts of the Complaint and attached exhibits as true and draws all reasonable inferences in favor of the Plaintiff, and therefore determines that causation has been sufficiently established. The motion is therefore denied as to Count III.

## COUNTS IV and V

■ The Defendant argues that Counts IV and V of the Plaintiff's Complaint be dismissed because such counts are based upon two criminal statutes, Retaliation for Past Official Actions, 18 Pa.C.S.A. § 4703, and Official Oppression, 18 Pa.C.S.A. § 5301, that do not create civil causes of action, but which are solely criminal statutes. Defendants' Brief, pp. 14–15. As such, the Defendant notes that these actions are not properly before this Court. Defendants' Brief, p. 15. The Plaintiff responds by stating:

The Defendants misconstrue the complaint suggesting that Plaintiff is at-

tempting to pursue a private cause of action under Pennsylvania's criminal and human rights statutes. This is not the case. The plaintiff is attempting to show a conspiracy and course of conduct by the Defendants which runs afoul of not only the Whistleblower Law, but also Pennsylvania's criminal and human relations laws.

The Plaintiff contends that the tortious conduct of the Defendants which also violates other Pennsylvania statutes it [sic] its application to her, is part of the basis of her due process claim.

Plaintiff's Brief, p. 19.

The Court finds difficulty in the Plaintiff's argument for two reasons. First, as we have analyzed previously, the Plaintiff has no substantive due process right to her employment as a school board secretary. As a result, no matter how the Pennsylvania statutes are interpreted, the Plaintiff cannot state a substantive due process claim in Counts IV and V. Therefore, the Court is left to view the Plaintiff's argument in her brief as one stating that her claims, based upon Pennsylvania statutes, are claims for the violation of procedural due process.

■ One of the leading cases on the subject of procedural due process is *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). *Roth* requires a two step process to evaluate violations of procedural due process: first, the Court must determine the nature of the interest at issue and if it is an interest protected by the Due Process Clause of the Fourteenth Amendment and, second, the Court must determine the extent of procedure necessary for protection of one's due process rights. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569–572, 92 S.Ct. 2701, 33 L.Ed.2d 548. Justice Stewart, writing for the Court in *Roth,* described the origins of

property interests as they relate to the protections of procedural due process:

Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Thus, the welfare recipients in *Goldberg v. Kelly, supra,* had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so. Just as the welfare recipients' 'property' interest in welfare payments was created and defined by statutory terms, so the respondent's 'property' interest in employment at Wisconsin State University–Oshkosh was created and defined by the terms of his appointment. Those terms secured his interest in employment up to June 30, 1969. But the important fact in this case is that they specifically provided that the respondent's employment was to terminate on June 30. They did not provide for contract renewal absent 'sufficient cause.' Indeed, they made no provision for renewal whatsoever.

Thus, the terms of the respondent's appointment secured absolutely no interest in re-employment for the next year. They supported absolutely no possible claim of entitlement to re-employment. Nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it.

In these circumstances, the respondent surely had an abstract concern in being rehired, but he did not have a property interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment.

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577–578, 92 S.Ct. 2701, 2709–2710, 33 L.Ed.2d 548, 561 (1972)(footnote omitted); *See also McKnight v. Southeastern Pennsylvania Transp. Authority,* 583 F.2d 1229 (3rd Cir.1978); *DeBlasio v. Zoning Bd. of Adjustment for Tp. of West Amwell,* 53 F.3d 592 (3rd Cir.1995)(*abrogation on other grounds recognized by United Artists Theatre Circuit, Inc. v. Township of Warrington, PA, et al.,* 316 F.3d 392 (3rd Cir.2003)).

The Court agrees with the Defendants that Counts IV and V are based upon Pennsylvania criminal statutes of Retaliation for Past Official Action, 18 Pa.C.S.A. § 4703 and Official Oppression, 18 Pa. C.S.A. § 5301. These statutes were not drafted for the purpose of creating property rights within individuals, but were in fact adoptions of two provisions of the Model Penal Code. The Court can find no purpose behind these two statutes to create property interests under the Due Process Clause of the Fourteenth Amendment within the Plaintiff or any other resident of the Commonwealth of Pennsylvania.[1] Therefore, Counts IV and V of the Plaintiff's Complaint are dismissed with prejudice as no amendment would cure the defects within the Plaintiff's claims.

## COUNT VI

■ The Defendants argue that Count VI of the Complaint should be dismissed based upon the Plaintiff's failure to allege membership within a protected class and treatment different from others who were similarly situated. Defendants' Brief, pp. 15–16. The Plaintiff responds that the Complaint does allege that the Plaintiff is a member of a protected class, that class of people "who exercise their first amendment rights, and report waste and wrongdoing under the Whistleblower Act." Plaintiff's Brief, p. 20. Plaintiff also argues that the Defendants' actions were not "rationally related to legitimate government objections [sic], specifically terminating the Plaintiff in retaliation for her good faith acts and in retaliating against the superintendent to whom the Plaintiff was married." Plaintiff's Brief, p. 20.

■ Under the Equal Protection Clause of the Fourteenth Amendment, a violation occurs when similarly situated persons are treated differently. *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). While the Court agrees that the rational basis test would apply to the termination of the Plaintiff from her employment as school board secretary, the Court finds no allegation within Count VI that establishes that the Plaintiff was treated dissimilarly from similarly situated persons through her termination which allegedly was motivated by retaliation on the part of the Defendants. It may be possible for the Court to infer a discriminatory purpose or motive by the fact that a conspiracy was alleged to have been formed "against her in violation of the laws of the Commonwealth of Pennsylvania and the United States." Complaint ¶ 69. Still, this does not establish the differential treatment necessary for a violation of the Equal Protection Clause. As the Plaintiff's allegations currently stand in Count

---

1. Outside of the due process context, the cases of *Agresta v. Goode,* 797 F.Supp. 399 (E.D.Pa., 1992) and *D'Errico v. DeFazio,* 763 A.2d 424 (Pa.Super., 2000) find that no private cause of action is created by 18 Pa.C.S.A. § 5301.

VI, the Court is without knowledge as to what treatment the Plaintiff has received that is different from similarly situated persons and who exactly are the similarly situated persons relevant to this Count. This Count is therefore dismissed without prejudice to the Plaintiff to amend it within twenty days of the date of the accompanying order in order to properly allege a violation of the Equal Protection Clause.

## COUNT VII

■ The Defendant argues that because it is based upon the Pennsylvania Human Relations Act (PHRA), this Count must be dismissed for the Plaintiff's failure to exhaust the mandatory administrative remedies under this statute prior to instituting a civil action. Defendants' Brief, pp. 16–17. The Plaintiff responds in the same manner as she did in relation to Counts IV and V and incorporates this response with her argument as to those two counts by including a passing reference to Count VII that reads as follows: "Likewise, Count VII claims unlawful discriminatory practices which constitute a due process violation of the Plaintiff's rights." Plaintiff's Brief, p. 19. The Complaint specifically alleges that the Defendants engaged in unlawful discriminatory practices defined by 43 P.S. § 955 and that this was done in violation of the Plaintiff's rights to due process and equal protection as well as under the First Amendment and Pennsylvania law. Complaint, ¶ ¶ 71–75.

Unlike our analysis of Counts IV and V, the Court believes that the state statute 43 P.S. § 955 could create a property interest for due process purposes. However, the Court notes that this statute does not create or seek to protect any substantive due process rights. *See* Discussion of Count II, *supra*. In addition, the Plaintiff fails to allege that she is within one of the classifications found within this statute so as to invoke the protection of procedural due process. The statute is essentially intended to prevent discrimination in employment or housing when such discrimination is based upon factors such as sex, race, color, religion, age, ancestry, national origin, or a non-job related handicap or disability. 43 P.S. § 955. Plaintiff's complaint is void of any such allegation.

■ The Plaintiff also fails to allege either the class of individuals of which she is a member or the class of individuals from which she was treated differently in order to state her claim of a violation of equal protection rights. As for the Plaintiff's First Amendment claim, the Court does not find the need for the Plaintiff's reliance upon 43 P.S. § 955 to support a claim under the First Amendment; the Plaintiff's claim under the First Amendment in this count would appear to be one for termination of a public employee for exercise of free speech rights. *See Swineford v. Snyder County Pennsylvania*, 15 F.3d 1258 (3rd Cir.1994). Nevertheless, the Court does not have a clear understanding as to this part of the pleadings.

Finally, it is unclear what Pennsylvania laws the Plaintiff is relying upon in Count VII. Amendments to this count could state viable procedural due process and equal protection claims. Therefore, this count is dismissed without prejudice to the Plaintiff to amend it within twenty days of the date of the accompanying order so as to state a viable claim under the law relied upon.

## COUNT VIII

■ The Defendants argue that Count VIII of the Complaint fails to state a cause of action for tortious interference with a contractual relationship in that the Plain-

tiff was an at-will employee as the school board secretary. Defendants' Brief, pp. 17–18. Therefore, Defendants argue that there was no contract in existence and also that the required third party is not identified in this count so as to fall within the *prima facie* law on this matter. Defendants' Brief, p. 18. The Plaintiff counterargues that the case of *Brown v. Hammond*, 810 F.Supp. 644 (E.D.Pa.1993) found that a non-statutory claim for wrongful discharge for at-will employees exists when the discharge "violates a significant and recognized public policy." Plaintiff's Brief, p. 20. The Plaintiff also adds that the school district is the third party and the Defendants, in their individual capacities, interfered with the Plaintiff's employment contract with the school district. Plaintiff's Brief, p. 21.

First, the *Brown* case concerns the cause of action for wrongful discharge of at-will employees that "violates a significant and recognized public policy." *Brown v. Hammond*, 810 F.Supp. 644, 646 (E.D.Pa.1993). This cause of action is not the same as the Plaintiff's allegation of tortious interference with a contractual relationship. The Court does view the employment relationship between the Plaintiff and the school district as one based upon a contract whereby the Plaintiff performed services for consideration. However, this was an at-will employment relationship according to Pennsylvania law. 24 P.S. § 4–404; *Buell v. Union Tp. School Dist.*, 395 Pa. 567, 150 A.2d 852, 854–855 (1959). The Pennsylvania Supreme Court has recognized the ability to terminate the at-will employment relationship: "Absent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason." *Geary v. U.S. Steel*

*Corp.*, 456 Pa. 171, 319 A.2d 174, 176 (1974). However, the Restatement (Second) of Torts § 766, adopted by the Pennsylvania Supreme Court in the case of *Adler, Barish, Daniels, Levin and Creskoff v. Epstein, et al.*, 482 Pa. 416, 393 A.2d 1175 (1978), discusses and recognizes the tort of tortious interference with a contractual relationship:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Guiding our analysis is Comment (g) to Restatement (Second) of Torts § 766 which reads as follows:

> g. Contracts terminable at will. A similar situation exists with a contract that, by its terms or otherwise, permits the third person to terminate the agreement at will. Until he has so terminated it, the contract is valid and subsisting, and the defendant may not improperly interfere with it. The fact that the contract is terminable at will, however, is to be taken into account in determining the damages that the plaintiff has suffered by reason of its breach. (See § 774A).
>
> One's interest in a contract terminable at will is primarily an interest in future relations between the parties, and he has no legal assurance of them. For this reason, an interference with this interest is closely analogous to interference with prospective contractual relations. (See § 766B). If the defendant was a competitor regarding the business involved in the contract, his interference

with the contract may be not improper. (See § 768, especially Comment i).

Relying upon the guidance provided by Comment (g), it is clear that § 766 contemplates that at-will contracts can be the subject of the tort of tortious interference with a contractual relationship. Therefore, the Court finds that the Plaintiff has sufficiently plead a cause of action based upon tortious interference with a contractual relationship in that she alleges that the Defendants, in their individual capacities, caused the school district to terminate its contract with the Plaintiff. The motion to dismiss is denied with prejudice as to this count.

## COUNT IX

■ Count IX alleges that the Defendants conspired against the Plaintiff in order to "deprive her of the post to which she was elected by the Board of Education, to wit School Board secretary, in violation of her due process rights, and rights secured by the laws of the United States of America." Complaint ¶ 80. Defendant argues for dismissal of this count by the fact that the Plaintiff's former position of school board secretary is not a "public office." Defendant's Brief, pp. 18–19. The Plaintiff has not submitted any argument within her brief on this matter.

It has been recognized that " 'Public office' ... mean[s] an elective or appointive position in which the incumbent is exercising a governmental function which involves a measure of policy making and which is of general public importance." *Appeal of Bowers,* 440 Pa. 310, 269 A.2d 712, 716–717 (1970). The Pennsylvania School Code does not require the school board secretary to be elected in a public election, but only by the duly elected members of the board, and that such secretary need not be a member of the elected school board. 24 P.S. § 4–433 outlines the duties of the secretary of a board of school directors. These duties include drafting of reports, keeping of records, drafting and executing documents, maintaining of accounts and general supervision of a school district's business affairs. These statutory duties do not include policymaking powers, nor do they indicate a sense that the secretary's position is one of general public importance. Therefore, the Court agrees with the position of the Defendants and Count IX is hereby dismissed with prejudice as no amendment can cure the legal deficiencies of the Plaintiff's allegations in this count.

## QUALIFIED IMMUNITY

■ The Defendants argue that they are entitled to qualified immunity for all of the allegations of the Complaint. Defendants' Brief, p. 19. Defendants argue that the Plaintiff has not "established a violation of any constitutional or statutory right." Defendants' Brief, pp. 19–20. Defendants also argue that because the Plaintiff was employed at-will, none of "her constitutional rights were violated pursuant to Section 1983" and that "it is ... unclear whether the Defendants violated any of her rights under the Pennsylvania Whistleblower Law." Defendants' Brief, p. 20. Plaintiff counter-argues that the actions of the Defendants "violate[d] established statutory rights to which the Plaintiff would be entitled" and that the Plaintiff was a protected employee under the Pennsylvania Whistleblower Law.

■ In order to apply the federal law of qualified immunity, the Court must conduct a two part inquiry. "[A] court must first determine whether the plaintiff has alleged the deprivation of an actual

constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399, 405 (1999). In order to be "clearly established", "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987). This is an objective, fact-specific inquiry based upon what the defendant knew at the time of his actions and if a reasonable person in the defendant's situation would understand his actions to be violating a clearly established right at that point in time. *Id.* at 640, 483 U.S. 635, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523, 531–532.

The defense of qualified immunity is denied as to Count I as such count rests upon state law alone (Whistleblower Law) and is not a federal cause of action. Because qualified immunity under federal law is applied only in those instances where a violation of rights under the federal Constitution has been alleged, and, more importantly under the first prong of the qualified immunity analysis, a constitutional right exists, the Defendants' request for qualified immunity for Count I is denied. *See Brown v. Grabowski,* 922 F.2d 1097 (3rd Cir.1990)(differentiating New Jersey state law claims and accompanying New Jersey law of qualified immunity and federal law claims and accompanying federal law of qualified immunity); *Campbell v. Burt,* 141 F.3d 927, 930 (9th Cir.1998)(not-

ing that defense of qualified immunity is intertwined with § 1983 actions).

■ The Defendants' claim of qualified immunity under the allegations of Count II also fails. Assuming the facts alleged to be true, the Plaintiff was a whistleblower entitled to the protection of the Pennsylvania Whistleblower Law even though she was an at-will employee. The Pennsylvania statute protected the Plaintiff from retaliation based upon her communications to the Auditor General of Pennsylvania even though her employment with the school board was at-will. This created a basis of the Plaintiff's right to procedural due process prior to termination for whistleblowing. On the second part of the inquiry, the Court finds that reasonable officials in the place of the Defendants would know that their actions in causing the Plaintiff's termination for her whistleblowing would violate the clear mandate of procedural due process granted by the Pennsylvania Whistleblower Statute to not retaliate against those individuals reporting waste or wrongdoing occurring in governmental bodies. Therefore, the Plaintiff possessed a clearly established right to procedural due process in her termination by virtue of the Pennsylvania Whistleblower Law. Qualified immunity is denied as to Count II.

■ In relation to Count III, the Plaintiff's claims for violation of her right to free speech, under the First Amendment, and rights of due process under the Fifth and Fourteenth Amendments withstand the defense of qualified immunity again. Plaintiff essentially is asserting a First Amendment retaliation claim and violations of her procedural due process rights resulting from her status as a "whistleblower." Clearly, the Plaintiff's rights of

free speech and due process, as alleged, were violated; these rights have been established and reasonable people in the Defendants' positions would know that taking action to cause the Plaintiff's termination because of the exercise of her right to free speech would contravene her right of procedural due process established under the Pennsylvania Whistleblower Law. On Count III, qualified immunity is denied.

 Since Counts IV, V, and IX are dismissed with prejudice, the Court need not address them relative to the issue of qualified immunity. Because the Court has permitted amendment of Counts VI and VII, the Court will not evaluate the issue of qualified immunity as it applies to these counts until the amendment is made by the Plaintiff and thereafter the Defendants may move to invoke qualified immunity as to the amended Counts VI and VII. Count VIII alleges tortious interference with a contractual relationship and as our analysis concluded as to Count I, qualified immunity is denied as to this Count as the federal law of qualified immunity is inapplicable to state causes of action.

An appropriate Order follows.

**AND NOW** this 20th day of April, 2005, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the Defendants' Motion to Dismiss (Document No. 15) is GRANTED IN PART and DENIED IN PART as follows:

1) As to Counts I, III, and VIII, the Defendants' Motion is DENIED;

2) As to Count II, the Defendants' Motion is DENIED AS TO THE PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIMS and GRANTED AS TO THE PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIMS and the Plaintiff's SUBSTANTIVE DUE PROCESS CLAIMS in Count II are DISMISSED WITH PREJUDICE.

3) As to Counts IV, V, and IX, the Defendants' Motion is GRANTED and Counts IV, V, and IX are DISMISSED WITH PREJUDICE.

4) As to Counts VI and VII, the Defendants' Motion is GRANTED and Counts VI and VII are DISMISSED WITHOUT PREJUDICE TO THE PLAINTIFF TO AMEND SAID COUNTS WITHIN TWENTY DAYS; and

5) As to the defense of Qualified Immunity, the Defendants' Motion is DENIED WITH PREJUDICE as to Counts I, II, III, and VII, DENIED AS MOOT as to Counts IV, V, and IX, and DENIED WITHOUT PREJUDICE AS TO COUNTS VI and VII, and the defense of Qualified Immunity may be renewed by Defendants as to the amendments of Counts VI and VII within twenty days of the filing of the Plaintiff's Amended Complaint.